URIAH S. WILLIAMS *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW.   *Evidence.*

It is not permissible to introduce previous statements made by a state's witness as corroborative of his testimony.

2. SAME.   *Suspicions.*

A witness should not be permitted to testify that he suspected the accused would commit the crime charged and acted in anticipation thereof.

FROM the circuit court of Webster county.

HON. WILLIAM F. STEVENS, Judge.

Williams, appellant, was indicted for arson, the burning of a storehouse, the property of one Stevenson, in which house appellant was at the time doing a mercantile business. The evidence in the case was wholly circumstantial. Smith and Dixon, witnesses for the state, testified that the defendant, some two or three weeks before the burning of the storehouse, was in the town of West Point, and while there sought to employ them to set the storehouse on fire; that they had told the fact at the time to certain men whose names the witnesses gave. The parties so named were called as state witnesses and testified, over the objection of defendant, to what the witnesses, Smith and Dixon, told them. The trial resulted in the conviction of the defendant, and he was sentenced to the penitentiary for the term of three years. From this judgment of the court defendant appealed to the supreme court. The opinion contains a further statement of the facts.

*Roane & Lamb* and *R. P. & C. B. Williams*, for appellant.

It was not competent to prove by other witnesses that the principal state's witness had made statements to them before the trial detailing the alleged facts to which he had testified. A party cannot corroborate his witness by showing that he had previously narrated the matter to which he testified. Surely if a witness needs corroboration to convince that he has sworn the truth, he must be aided by something more than his own unsworn statements. You can impeach a witness by showing that he had previously made a contradictory statement, but you cannot corroborate him by showing like statements.

It was error, certainly, to allow state's witness Kelly to detail his suspicions of Williams' intent to burn the house. Appellant's objection to this testimony was duly made and should have been sustained. If witness Kelly knew any facts, he should have been confined to a statement of them.

*Monroe McClurg,* attorney-general, for appellee.

The case was one of circumstantial evidence, but the circumstances so unerringly point to appellant's guilt that this court ought not reverse the conviction. If the court below committed errors in the admission of evidence, they are not reversible ones. The fullest latitude was due the state in a case like this.

Argued orally by *S. M. Roane,* for appellant, and by *Monroe McClurg,* attorney-general, for appellee.

TERRAL, J., delivered the opinion of the court.

The conviction of the defendant is sought to be supported, if it may be so supported, by evidence of the burning of the storehouse occupied by the defendant by such apparent means—the profuse use of oil—as being a way which George Smith testified the defendant proposed to him to burn said building. And to give cogency to this presumption that the defendant caused the house to be burned, because the means that he proposed Smith should use in its burning were apparently used by the incendiary, or to fortify the testimony of Smith upon which the alleged presumption rested, certain hearsay evidence, in repeated instances and by divers persons, was offered by the state's counsel, and admitted by the court over the objection of the defendant. As an illustration of the character of the evidence thus admitted to the jury, George Smith, who swore that the defendant offered to hire him to burn the storehouse, testified, also, that he told Cottrell and several other persons of such proposed burning, and thus placed before the jury his antecedent declarations of his testimony then given; and Cottrell and said other persons were introduced, and testified, in corroboration of Smith, that they had severally seen Smith at the places and times denoted by him in his evidence, and that Smith told them that he was planning to catch defendant in the burning of his storehouse; and these repetitions of his story, given in evidence, made to various persons, were presented to the jury

as a corroboration of his evidence; and these various persons, for the like purpose of his corroboration, were introduced, and testified circumstantially as to where and when they had several-ly met Smith when in pursuit of his plan of entrapping the de-fendant, and also related his declarations as to his business—carefully, however, excluding the details.of his evidence as laid before the jury.

1. It is a principle of the common law that previous declara-tions of a witness in conformity with his testimony before the court cannot be given in evidence at all affirmatively; and while a witness may be impeached by showing that he has made decla-rations contradictory to his evidence before the court, yet evi-dence that he has on other occasions made statements similar to what he has testified in the cause, is not admissible, except under certain circumstances not existing in this case. 1 Greenl. Ev., sec. 469; Whart. Cr. Ev., sec. 492; *Com.* v. *Jenkins,* 10 Gray, 485; *Robb* v. *Hackley,* 23 Wend., 50; *People* v. *Mead,* 50 Mich., 228; 15 N. W., 95; *Nichols* v. *Stewart,* 20 Ala., 358. If Smith's evidence given under sanction of his oath before the jury be of doubtful credit, his unsworn statement must be .of less credit, and by adding his unsworn statement to his sworn evidence, the latter cannot be increased in value. . For, if so, the often-re-peated declarations of a discredited witness in harmony with his evidence before the jury would render the latter superior to the evidence of a witness of unimpeachable integrity; and such effect could not arise by the mere trick of an unscrupulous wit-ness.    We .think the matter above indicated should have been excluded from the consideration of the jury.

2. Another species of evidence admitted to the prejudice of the defendant were certain suspicions indulged against him, and laid with great particularity before the jury.    As an instance, take. the testimony of Kelly, from which it is plainly deducible that he suspected Williams would burn his storehouse, which was near that of the witness, who was induced to watch the storehouse of defendant for several nights in anticipation of its

being burned by the defendant, and who placed his own conduct before the jury as evidence of guilt on the part of the defendant, thus plainly giving to the jury his suspicions in the matter, fortified by his opinion of the culpability of the defendant, so strongly impressed upon him that, with great inconvenience to himself, he watched to see the defendant's crime perpetrated by the actual burning of his storehouse. Certainly the suspicions of a witness, however arising, or his acts due in consequence thereof, should not be put in a scale against the liberty of the accused. We know of no rule of law justifying its admission before the jury.

*Reversed and remanded.*