## WALKER *et al. v.* STATE.*

(Division A.   May 19, 1924.)

[100 So. 9.   No. 23967.]

1. CRIMINAL LAW.   *Testimony as to statement by defendant's sister out of defendant's presence held inadmissible.*

   Testimony as to statement by defendant's sister that defendant had told her that she had committed the crime, not made in defendant's presence, *held* inadmissible.

2. CRIMINAL LAW.   *Testimony as to statement by defendant's sister as to defendant's statement to sister in defendant's absence held prejudicial.*

   In prosecution for murder, testimony as to statement made by defendant's sister, in defendant's absence, as to statement made by defendant to sister, corroborative of defendant's confession introduced over defendant's objection, and other facts showing defendant's guilt, *held* prejudicial.

3. CRIMINAL LAW.   *Hearsay evidence held inadmissible.*

   In prosecution for murder of baby, officer's testimony as to statements made in absence of defendant that defendant wanted to kill baby *held* inadmissible, being hearsay.

---

*Headnote 1.   Criminal Law, 16 C. J., section 1275;   2.   Criminal Law, 17 C. J., section 3675;   3.   Criminal Law, 16 C. J., section 1275.

APPEAL from circuit court of Simpson county.

HON. W. L. CRANFORD, Judge.

Enoch Walker and Virginia Stubbs were convicted of murder, and they appeal.   Reversed, Enoch Walker discharged, and case against defendant Virginia Stubbs remanded for new trial.

*E. L. and A. W. Dent,* for appellants.

·I.   The motion for a peremptory instruction should have been sustained as to Enoch.   Enoch made only one statement in the whole record and that was when he told Jim Lawson, ''a baby died last night, and he had to bury it.''   That fact within itself is certainly no evidence of

murder, but on the contrary it appears that he told the very first negro he saw after he buried it giving the reason why he did not meet Jim Lawson the night before.

Much is said by the sheriff and other witnesses about what Lizzie said at the time of the inquest. It appears that Enoch was there with some thirty or fifty white men when Lizzie was making the statements, but it nowhere appears that Enoch heard the statements, understood or assented to them, and therefore whatever Lizzie said was purely and simply hearsay and incompetent. 16 C. J. page 660; *Irving* v. *State*, 47 So. 518; *Tate* v. *State,* 48 So. 13; *The People* v. *Friedman,* 205 N. Y. 161, 98 N. E. —, 45 L. R. A. (N. S.), 55.

We believe this court will hold that the statements of Lizzie to the sheriff and others were incompetent, and that this record does not "affirmatively show with the clearness required in criminal cases that" the statements Lizzie made, were heard and understood by Enoch. The only other evidence against Enoch is what it is claimed by the sheriff and others that Virginia said while in jail at Mendenhall when Enoch was not present.

16 C. J. 658, 659. "Confession or admissions of co-defendants are not admissible in evidence against another, unless they were made in his presence and assented to by him, or unless he admitted their truth."

II. The motion for a peremptory instruction should have been granted to Virginia. What Lizzie said at the "inquest" implicating Virginia when Virginia was in jail at Mendenhall was undoubtedly hearsay evidence and incompetent also against Virginia, and leaving out this incompetent testimony as to what the sheriff, Weaver and Finley, said Lizzie said at the "inquest," there is no case against Virginia unless her statement in jail is shown by the record to have been freely and voluntarily made beyond a reasonable doubt.

The confession of Virginia while in jail to the officers under the circumstances was not free and voluntary beyond a reasonable doubt. To hold that when the alleged

confession was made, Virginia's mind was free and un-influenced by the surroundings, would be ridiculous. *Jim Williams* v. *The State,* 72 Miss. 117; *State* v. *Smith,* 72 Miss. 40; *Blalack* v. *The State,* 79 Miss. 517; 16 C. J. 727, p. 1491, and note.

Therefore, we respectfully submit there is no compe-tent evidence in this record against Virginia, and her mo-tion for a peremptory instruction when the state rested should have been sustained.

*F. S. Harmon,* Assistant Attorney-General, for the state.

The testimony for the state was to the effect that Enoch, the natural father of the child, "wanted to get shed of it," and alleged that it was too white, and that, after a conversation between Enoch and Virginia before Enoch went to work at the Finkbine mill, Virginia hit the baby in the head with a hammer, fracturing its skull and killing it with the second lick on the back of the head; that Enoch buried the child that evening in a homemade coffin in a shallow grave located on the edge of his land in a marshy reed brake near the bed of a small watercourse.

Thirty-nine days later, after suspicions had been aroused, officers and citizens of Simpson county went to the house, had these women point out the grave, disin-terred the body; physicians made a careful examination of its skull and an autopsy was held, and on the findings of the day's work, these two defendants were arrested. The testimony showed that the two physicians found the skull fractured and vicious bruises on both the front and back of the head.

Virginia made a confession in the jail shortly after she was arrested which was freely and voluntarily given, and not induced either by fear or hope. This confession was testified to by the sheriff of Simpson county, and a second confession in perfect agreement with the first was made in the presence of the sheriff, the marshal of D'Lo, and one of the sheriff's deputies.

It is true that a confession is always to be viewed with caution and that it is *prima-facie* inadmissible, but when repeated statements show that it was absolutely voluntary and not induced by either fear or promise of reward there is no question as to its admissibility. *Peter (a slave)* v. *State,* 3 Howard, 433, 1 Morris State Cases, 124; *Peden* v. *State,* 61 Miss. 267.

In her confession, Virginia alleged that Enoch, the natural father of the child, "wanted to get shed of it" because it was too white, and told of the conversation with him along this line before he went to work at the Finkbine mill in the morning, and of the burial of the baby in the evening after her heartless murder of her own baby by hitting it in the head twice with a hammer. In addition to this testimony implicating Enoch in the crime, Lizzie Stubbs, Virginia's sister, who lived in the same house testified in the presence of Enoch and a group of citizens of the county at the time of the disinterment, giving all the details of the crime. Enoch is thus vitally connected with the crime through the confession of Virginia, the co-defendant, and by the statements of Lizzie Stubbs in his presence by the side of the open grave.

Argued orally by *E. L.* and *A. W. Dent,* for appellants, and *F. S. Harmon,* Assistant Attorney-General, for the state.

HOLDEN, J., delivered the opinion of the court.

The appellants, Enoch Walker and Virginia Stubbs, were convicted of the murder of a ten days' old infant of Virginia Stubbs, and were sentenced to the penitentiary for life. We shall only state enough of the facts to understand the decision upon appeal.

The young infant of the appellant Viginia Stubbs died and was buried on the place occupied by the appellants. Enoch Walker lived in the house with Virginia Stubbs and her sister Lizzie. None of the parties were married, but the two women, Virginia and Lizzie Stubbs, had a

number of bastard children each. After the dead infant had been buried about forty days, the body was disinterred by the officers of the county, and it was discovered that the child had died from two hammer blows on the head. When it developed the child had been killed by violent means, Virginia Stubbs, one of the appellants herein, was immediately arrested and lodged in jail. She afterwards confessed to the killing, stating that she struck the child two blows on the head with a hammer which caused its death. This confession was introduced over her objection, at the trial.

At the grave of the dead infant, while the sheriff and other officers were examining the body to ascertain the cause of death, Lizzie Stubbs, sister of Virginia, was questioned in the presence of the officers and the crowd of white people there assembled, and she stated that on the day the child died she went to a neighbor's house to get some milk, and when she returned home to the house where she and her sister Virginia were living, Virginia told her that she (Virginia) had killed the baby because it was going to die anyway; and that the hammer had blood on it when she (Lizzie) found it in the back of the house that day. That statement made by Lizzie at the grave was not in the presence of Virginia Stubbs, who was then in jail.

This statement of Lizzie was exceedingly damaging to Virginia, because it was corroborative of Virginia's confession, and also corroborated and supported other facts and circumstances showing her guilt, with reference to the hammer and the blows on the head of the dead infant

The sheriff, over the objection of the appellants, was permitted by the court to tell the jury everything that Lizzie had said at the grave incriminating Virginia as the murderess of the infant. The court also permitted the sheriff to testify as to what Lizzie at the grave, and Virginia in jail, both had said, not in Enoch's presence, as to the connection the appellant Enoch Walker had with

the killing of the infant; the witnesses testified that Lizzie said that Virginia said, etc.

There is absolutely no testimony in this record incriminating Enoch Walker, except the hearsay testimony of the officers who testified they heard Virginia say, and that Lizzie said Virginia said, that Enoch Walker wanted to do away with the baby because it was too white. These statements by Virginia and Lizzie were not even made in the presence and positive hearing of Enoch Walker, nor in court at the trial, and of course was not competent testimony to establish his guilt. So, appellant Enoch Walker must necessarily be discharged under the proof in this case.

Several grounds are urged for reversal as to the conviction of Virginia, and many of them are indeed serious; but we shall notice only one, which will result in a reversal, and the others may not arise on a new trial.

The error that we shall reverse on, as to Virginia, is that the court should not have permitted the officers to testify as to what Lizzie said with reference to the admission of guilt by Virginia, when Virginia was not present when the statement was made by Lizzie at the grave, but was then incarcerated in jail. This testimony was clearly inadmissible, pure hearsay, and was very injurious to the rights of Virginia Stubbs in the trial of her case, and for this error a new trial must be granted her.

The appellants did not take the stand in their own behalf at the trial. Lizzie testified that she had been whipped and made to tell the story against Virginia, and that it was false. Therefore her statement at the grave that Virginia had told her that she killed the baby with a hammer, because she thought it was not going to live anyway, was hearsay testimony when given by the officers at the trial. The testimony of the sheriff, a man of high standing, before the jury, as to this statement made by Lizzie against Virginia at the grave of the infant, being very damaging in its nature, we are not prepared

to say that without it there would have been a conviction of Virginia, since there are a number of other doubtful propositions appearing in the case, which are unnecessary for us to mention at this time.

Therefore the judgment of the lower court is reversed the appellant Enoch Walker discharged, and the case against Virginia Stubbs is remanded for a new trial.

Reversed, Enoch Walker discharged, and the case. against Virginia Stubbs remanded for a new trial.

*Reversed and remanded.*