## STUBBS *v.* STATE.*

(Division B.   Dec. 12, 1927.)

[114 So. 827.   No. 26795.]

1. CRIMINAL LAW. *Evidence held to establish corpus delicti of un-lawful killing, warranting admission of voluntary confession.*

   The evidence of this case examined, and *held* sufficient to establish the *corpus delicti* of an unlawful killing so as to warrant the admission of voluntary confession.

2. CRIMINAL LAW. *On conflicting evidence whether confession was free and voluntary is question for trial judge; ruling of trial judge as to whether confession was made freely and voluntarily based on conflicting evidence will not be disturbed on appeal.*

   Where the evidence for the state showed that a confession was made freely and voluntarily, but is contradicted by witness for the defendant, the decision of the conflict is for the trial judge, when the evidence is offered, and his ruling on the conflict of evidence will not be disturbed on appeal.

3. CRIMINAL LAW. *Where witnesses testifying to confession testified at former trial, court will not look to former record to see evidence then introduced, but defendant should introduce it.*

   Where a confession is offered on the second trial of the cause, and the witnesses who testified thereto have testified in a former trial, the court will not look to the former record to see what evidence was introduced on the former trial, but it is the duty of the defendant, if the former evidence contradicts the latter, to introduce it, or to make proof thereof, on the preliminary hearing before the trial judge. · ·

---

*Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 735, n. 34; p. 737, n. 51; 17CJ, p. 205, n. 29; p. 242, n. 51. On use of confession in aid of other evidence to establish *corpus delicti*, see annotation in 68 · L. R. A. 73; 1 R. C. L. 588.

APPEAL from circuit court of Simpson county.
HON. W. L. CRANFORD, Judge.

Virginia Stubbs was convicted of murder, and she appeals. Affirmed.

*A. W. Dent* and *E. L. Dent,* for appellant.

The peremptory instruction requested by appellant should have been given. No motive or malice was shown. *Guest* v. *State,* 96 Miss. 871, 52 So. 211; *Jones* v. *State,* 91 Miss. 668, 45 So. 145; *Allen* v. *State,* 88 Miss. 159, 40 So. 744; *Taylor* v. *State,* 66 So. 321; *Boyd* v. *State,* 36 So. 525; *Patty* v. *State,* 126 Miss. 94, 88 So. 498; *Houston* v. *State,* 117 Miss. 311, 78 So. 182.

The motion to exclude the evidence offered on the part of the state, when the state had rested, and for a peremptory instruction to the jury to find the defendant not guilty, should have been sustained. The confession was not from the spontaneous operation of appellant's own mind. It was not free from extraneous causes and influences. It was not free of constraint. Mr. Duckworth with hammer and his man Findley and Weaver is not unlike Mr. Fitzgerald's spiritualism in the case of *Johnson* v. *State,* 107 Miss. 196, 65 So. 218. Johnson was sick when Mr. Fitzgerald told him he was a spiritualist, and could look down in his black heart and see this diabolical crime he committed at midnight the other night. Appellant was sick when the sheriff approached her with the hammer and said to her "This is the hammer they tell me you killed your baby with," or words to that effect. "Is that true or not, don't tell me a story, if you did it you know that you done it, and if you didn't do it, you know it, I don't want anything but the truth, I don't want to take advantage of you, did you kill the baby or not?" We would be fooling ourselves if we believed the answer of appellant to this insolvent, audacious and abusive question would proceed or spring from a spontaneous operation of appellant's own mind, free from being influenced by her sick condition and being in jail and the high standing of the sheriff with a hammer in his hand. We would be doing violence to the words "free and voluntary" to so characterize this alleged confession under the circumstances, much less be-

lieve it was free and voluntary beyond every reasonable doubt. These words have well defined, recognized and definite meanings. It must not only have been freely given but it must have also been voluntarily given to have made it competent evidence against appellant. We refer to any dictionary as well as the usual and common use of the two words and it cannot be said that her statements in jail were made either freely or voluntarily under the circumstances as disclosed in the record.

We respectively call the court's attention to the following well-considered cases on this point: *Fisher* v. *State,* 110 So. 361; *Clash* v. *State,* 112 So. 370; *White* v. *State,* 129 Miss. 182, 91 So. 903, 24 A. L. R. 699; *Johnson* v. *State,* 107 Miss. 196, 65 So. 218, 51 L. R. A. (N. S.) 1183; *Mathews* v. *State,* 102 Miss. 549, 59 So. 842; *Jones* v. *State,* 133 Miss. 694, 98 So. 150; *Ezra Hampton* v. *State,* 88 Miss. 257, 40 So. 545; *State* v. *Smith,* 18 So. 482; *Banks* v. *State,* 47 So. 437, 93 Miss. 700; *Durham* v. *State,* 47 So. 545; *McMaster* v. *State,* 82 Miss. 549, 34 So. 156; *Hamilton* v. *State,* 77 Miss. 675, 27 So. 606; *Ford* v. *State,* 75 Miss. 101; *State* v. *Davis,* 125 N. C. 612, 34 S. E. 198.

*Rufus Creekmore,* Assistant Attorney-General, for the appellee.

Counsel first argue that there is absolutely no motive shown in this case as to why the appellant should murder her child; and that the state has absolutely failed to prove malice on her part. As to the first point, the decisions of the supreme court of this state have held that it is not necessary in order to convict a person of the crime of murder that a motive for the crime be shown. *House* v. *State,* 94 Miss. 107, 48 So. 3, 21 L. R. A. (N. S.) 840; *Johnson* v. *State,* 140 Miss. 889, 105 So. 742.

But even though the rule in this state were otherwise, yet, motive has been proven in this particular case. The record shows that appellant and Enoch Walker were

living together and that when this child was born, he disowned it as being his, because it was too white, and ordered Virginia to do away with it.

On the second point, while it is true that malice is an essential element of the crime of murder, yet it is not necessary that express malice be proven. The rule is well settled in this state that a presumption of malice arises from an unexplained killing of a human being by the use of a deadly weapon. Where one is accused of murder, the law presumes him to be innocent until the contrary is made to appear. But as it is shown that the killing was done with a deadly weapon, the general presumption yields to the specific proof and the law infers that the killing as unexplained was malicious and, therefore, murder; but, if the attendant circumstances be shown in evidence whether by the state or by the accused, the character of the killing is to be determined by considering them; and, if upon a consideration of all the evidence, the jury is satisfied beyond a reasonable doubt that the defendant is guilty, then they should find him guilty. Some of the later cases express this principle thus: ''The deliberate use of a deadly weapon in a difficulty not in necessary self-defense is in law evidence of malice.'' *McDaniel* v. *State,* 8 S. & M. 401.; *Green* v. *State,* 28 Miss. 687; *Mask* v. *State,* 36 Miss. 77; *Hathorn* v. *State,* 58 Miss. 778; *Bishop* v. *State,* 62 Miss. 289; *Ingram* v. *State,* 62 Miss. 142; *Lamar* v. *State,* 63 Miss. 265; *Raines* v. *State,* 81 Miss. 489; *Riley* v. *State,* 109 Miss. 286; *McGehee* v. *State,* 138 Miss. 822, 104 So. 150; *Johnson* v. *State,* 105 So. 742.; *Hardy* v. *State,* 108 So. 727.

Counsel in their brief cite a number of cases none of which, however, are cases which I consider in point with the proposition which is here presented. In the Jones case, the state merely proved that the defendant had killed the deceased. The defendant took the stand in his own behalf and testified that the killing was in self defense. The testimony of the only eye witness to the killing was to the same effect and their testimony was not

impeached, and uncontradicted. In the Allen case, the testimony of the only eye witness to the death of the deceased was arbitrarily rejected by the jury. In the Taylor case, the testimony of the physicians was to the effect that there were no evidences of violence on the person of the dead child and their opinion that it died from suffocation was based solely upon the fact that no reasons were disclosed why it should have died from natural causes. The Patty case cited by counsel supports the proposition which we are here urging upon the court; namely, that malice is presumed, from the use of a deadly weapon in a killing unless explained.

It will be observed that the court followed the approved procedure laid down by the supreme court of this state as to the preliminary examination by it before passing on the competency of the evidence. The court heard the testimony offered by the state witnesses which was to the effect that the confession was free and voluntary and was obtained only after the defendant had been warned that any statements which she would make concerning the confession would be used against her on the trial of the case in the circuit court. The testimony offered for the defendant is directly in conflict with that offered by the state and the court after having heard the witness, after observing his conduct and demeanor on the witness stand, was satisfied beyond all reasonable doubt that the confession was obtained in the manner detailed by the state's witness. He thereupon overruled the objection and permitted the confession to go to the jury. No error was committed by him in this respect, but he followed the proper procedure as has been laid down in the courts of this state in the cases of: *Simmons* v. *State,* 61 Miss. 243; *Ellis* v. *State,* 65 Miss. 44, 3 So. 188; *Lee* v. *State,* 137 Miss. 329, 102 So. 296; *Brown* v. *State,* 142 Miss. 335, 107 So. 373.

None of the cases cited by counsel in their brief on this point are applicable to the case at bar, because in each of them, there was no question but that the confes-

sion was procured by duress, by threats, by administration of the water cure, or by inducements and holding out hope of reward. It is deemed unnecessary to discuss these cases in detail and distinguish each particular one because the general statement above applies in some respect to each and every one of them.

Argued orally by *E. L. Dent* and *A. W. Dent,* for appellant, and *Rufus Creekmore,* Assistant Attorney-General for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, Virginia Stubbs, was convicted of the murder of an infant, and sentenced to imprisonment for life in the state penitentiary.

The principal ground relied upon for reversal is the appellant's confession to the sheriff. This case was previously before this court under the style of *Walker et al.* v. *State,* 135 Miss. 422, 100 So. 9, in which case the judgment was reversed, Walker discharged, and the case remanded for a new trial as to the appellant.

The infant killed was born early in the year 1923. After its death and burial, which seems to have been kept a secret, some information circulated around the neighborhood that the child was missing, and a search was instituted. In a woodland, some three hundred yards from appellant's house, in a secluded and damp spot of earth, the grave was found. One of the witnesses who found the grave, when coming to the place, took a stick and stuck it in the loose earth until it touched a box under the ground, in which afterwards the child was found. He testified that he went to the sheriff and reported this fact; that thereafter in company with the sheriff, his deputy, and other persons, they repaired to the place, exhumed the body, and had a physician to make an examination of it; that such examination disclosed that the skull of the infant had been crushed in by a blunt instru-

ment, that the skin was not broken over the wounds, and
that blood had coagulated in them under the skin; and
the physician testified that the child's death was the re-
sult of such blows.

The body was found and exhumed on the 27th day of
March, 1923; and the testimony of the doctor was to the
effect that the deceased was a normal and well-developed
child of the age of fifteen or twenty days at the time of
its death and that it was of mixed races.

It appears that the appellant had been arrested before
the body was exhumed on the charge of being guilty of
murder, and confined in jail.

After the body of the child was found, it appears that
a hammer was also found buried on the premises of the
appellant, and the sheriff, accompanied by a deputy, took
it to the jail where appellant was confined and asked her
if she had ever seen the same, and she replied that she
had. According to the sheriff's statement, he said: "Vir-
ginia, this is the·hammer they tell me you killed your baby
with." She said: "I started to tell you all about that
the other evening." The sheriff then testified that he
told her if she told him anything that it would be no
secret, that it would be used against her, but she could
make the statement if she wanted to, and that she then
said that she desired to make a statement. Thereupon
the sheriff asked her: "Did you kill your baby?" She
replied: "I did." The sheriff then asked her why she
killed her baby, and she stated that Enoch Walker, the
man she and her sister were living with at the time, stat-
ed that the baby was not his, and that he wanted her "to
do away with it before he returned." She then described
the manner in which she killed the infant, stating that
she placed a vaseline bottle under the child's head and
then lay down on it, but that this did not kill it, and she
then took the hammer and struck it on the back of the
head, that it did not stop breathing, and that she then
struck it on the side of the head above the ear, and it did

stop breathing, and that when Walker returned that evening he made a box and buried it.

On cross-examination, the sheriff was asked, with reference to his testimony in the former trial, if he did not fail to state in that trial that any statement the appellant made would be used against her; and he was also asked if the deputy who accompanied him did not abuse the defendant and tell her that she "just as well tell it," and that a confession had been made by Enoch Walker and her sister. The sheriff denied making any threats, or that the deputy cursed or abused the appellant, and stated that he did not and would not permit such conduct. The deputy sheriff was also introduced as a witness, and his testimony supported the testimony of the sheriff in reference to the confession, but he denied using threats or violence in connection with such confession.

Another deputy sheriff was introduced, who, subsequent to this confession, accompanied the sheriff to the jail and had an interview with the appellant in which he said he asked her was she the woman who killed the baby, and she replied that she was, that she told him the details of the circumstance of the killing, and that he used no threat or persuasion to induce such confession.

Another person, the jailer, was introduced for the defendant. He stated that he was jailer at the time the sheriff and deputy visited the appellant, and that he took them to the door of her cell; that he heard the deputy sheriff curse the appellant and tell her that they already had proof of her guilt, calling her foul names and telling her she "just as well tell it." The conversation between the sheriff and the prisoner and the deputy and the prisoner, as testified to by the jailer, without detailing it here, was sufficient, if believed, to render the statement inadmissible.

The defendant was introduced on the confession, and denied making it to the sheriff or deputy, but stated that if she did make it she was so frightened she did not

know what she was saying, and that the deputy sheriff cursed her and called her vile names in addressing her.

The court held the confession to be free and voluntary, and admitted it in the evidence, but stated in the ruling:

"Now as to the difference in the testimony given here on the stand to-day and that given on the former hearing, I won't pass on that because that is a matter that can be referred to on cross-examination, but the direct testimony of the two officers indicates that the confession was free and voluntary and not extorted."

The defendant's theory of the case was that the child was born on the 4th day of February, 1923; that she was sick with influenza at the time the child was born, and that the child was born with it and also had chicken pox; that it died one week after its birth; that they were too poor to have a physician or buy a coffin for the child, and that Walker made the coffin; that Walker buried it in the place described; that she was unable to attend the burial and did not know how the child was buried; and that the colored cemetery was a considerable distance from her home, and that they did not have the means to have it carried and buried there.

There was other testimony for the defendant; and a number of witnesses testified in corroboration of her statement.

The case was submitted to the jury, which found her guilty as charged, fixing her punishment as life imprisonment.

It is insisted that the confession was inadmissible for two reasons: (1) That the *corpus delicti* was not sufficiently proven to admit the confession of the defendant; (2) that the confession was inadmissible, because it was not given freely and voluntarily, and that the defendant should therefore have been acquitted, the evidence being insufficient, apart from the confession, to convict her.

We think the evidence is sufficient to establish the *corpus delicti.* Whether the defendant's version of the dates of the child's death and burial be correct or not,

we cannot say that there is no evidence to sufficiently establish its death by unlawful means. It is argued that the doctors' testimony as to the presence of the coagulated blood is unreasonable and contrary to all human experience; that the child had been dead and buried nearly forty days in a watery, damp, muddy place in a spring run; that the body was covered with mud and water during this period of time; and that the blood, if such there had been, would have been absorbed by the water. It was buried some eighteen inches deep in the ground, and, while the water and mud covered the baby in the coffin, still it is not impossible for the blood to have coagulated beneath the skin, which was unbroken, and the crushed skull. The proof shows that, when the body was exhumed, it was in a pine box made of boards approximately one inch in thickness. While the joining of the parts of the box would permit penetration of water in it, it is improbable and practically impossible for the wounds or bruises to have been inflicted after the burial. The box was intact, and the injuries could not have been made at the time the coffin was removed from the grave, or caused by the stick used to punch into the burial mound. Taking the circumstances as disclosed by the evidence, there is no ground to believe that these bruises were made subsequent to the burial of the child, and, from all the circumstances as detailed, we think there was sufficient proof of human criminal agency in producing the death of the child.

On the second question, as to whether the confession was voluntary, we think it is a question of fact on the evidence for the trial judge to decide. There was a direct conflict in the evidence as to the admissibility of the first confession. While the cross-examination of the sheriff and the deputy tended to show that they added to their former statements on the admissibility of evidence that they cautioned the appellant that what she said to them would be used against her and would not be kept secret, still the stenographer who took the former testi-

mony was not introduced to testify as to the correctness of the notes taken, nor were the notes themselves introduced in evidence as being approved as correct on the former appeal. We cannot look to the record on the former appeal to see what evidence was before the court, because when the confession in the present case was offered there was a conflict as to whether it was voluntary, and it was the appellant's duty to introduce the former evidence if she desired it overruled. After all, the trial judge is the trier of fact, whose decision will govern unless we can say that the evidence shows to our satisfaction that the confession was not free and voluntary.

Taking the evidence in the record and comparing it carefully, we think it was purely a question of fact for the decision of the trial judge, and his statement that the contradiction, or difference between the evidence could be developed on cross-examination does not show that he did not pass upon the credibility of the witnesses testifying before him. In fact, we think that he did pass upon their credibility, and the evidence of the witnesses sustaining his rulings is not so unsatisfactory or contradictory as to warrant us in overruling the trial judge upon this proposition.

We find no further error in the record which would warrant us in reversing the case. The judgment of the court below will therefore be affirmed.

*Affirmed.*