RUTLEDGE *v.* STATE.

(Division A. Dec. 10, 1934.)

[157 So. 907. No. 31301.]

H. G. Johnston, of Hernando, for appellant.

W. D. Conn, Jr., for the state.

Argued orally by **H. G. Johnston,** for appellant, and by **W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

**McGowen, J.,** delivered the opinion of the court.

At the April, 1933, term of the circuit court, Bryce Rutledge was indicted for arson in the burning of a barn in the nighttime on land owned by J. D. Vance and leased to L. V. Sanders. At the October, 1933, term of court, he was tried and convicted to serve seven years in the state penitentiary, from which he prosecutes an appeal here.

The parties living on the place testified that the barn was discovered to be on fire some time after midnight, or the morning of March 5th, which was Sunday. They also testified as to feeding the stock and milking the cows on Saturday evening at dark, and that there was no fire, or evidence of fire, about the barn, which was destroyed later together with live stock and feedstuff. There was evidence of some tracks leading away from the barn of no substantial value in the case.

On Tuesday after the burning, a negro named Bryant Hughey was arrested and charged with the crime. Some days later, Leland Faulkner, Vester Christman, and the appellant were arrested. Subsequently, there was a preliminary hearing before Dr. Ward, as a justice of the peace, whereat Hughey was offered, by the state, as a witness, and, upon oath, testified that he knew nothing whatever concerning the burning of the barn. He was transferred from jail at Batesville to Sardis, and there was another hearing. Hughey was again offered by the state as a witness and testified as to the guilt of himself and the three white men. His story amounts to this: That on Saturday night he was asleep in bed with his wife at his home when he was awakened by a knocking at the door, and, being called out, was told that he could get his hoe, and, after some discussion, he, in company

with Faulkner, Christman, and the appellant, started to Faulkner's to get the hoe. The white men carried Hughey to the vicinity of the barn, and left him at the gate of the barn lot in charge of Christman, and threatened him with death if he ever told what he saw, and that, while he (Hughey) was thus guarded by Christman, Faulkner and the appellant went to the barn, struck matches, set fire to the hay, and the barn was thereby destroyed. Hughey testified as to a threat on the part of the appellant against Sanders and Vance, the owner and lessee, because the appellant had been required to move from the place. Hughey also testified that Rutledge, the appellant, ordered him to come to the appellant's house on Sunday, and that he did so. Hughey denied that any hope of reward or punishment had been used by the officers in securing this statement from him. He admitted that he had testified first that he did not know anything about the fire, and gave as his reason therefor that he had been threatened with death by the appellant, and that he was afraid to tell it. He also admitted that, although he had pleaded guilty at the April, 1933, term of court, he had remained in the custody of a deputy sheriff and had worked about his house, and had not been sent to the penitentiary.

Sanders, the lessee of the place, testified that Rutledge, the appellant, did not want to move from the place when Sanders rented it from Vance, and had threatened to burn up everything on the place if he had to move, but that he did move.

The appellant and his wife testified that on the night the barn was burned they were at home together all night, and played cards with two visitors until one o'clock in the morning; that they knew nothing about the fire, and denied the whole occurrence as detailed by Hughey. Faulkner and Christman likewise testified that they were not with the appellant or Hughey on the night in question, and they testified that they were in other places,

and denied any knowledge of, or connection with, the arson. The two persons said to have played cards with the appellant and his wife were not offered as witnesses by either side, although their names were given. The wife of Hughey did not testify.

The appellant, Rutledge, was tried separately, and he denied the crime, and denied having made any threat to Sanders to burn his property.

The appellant assigns only one ground of error, that the verdict and judgment is contrary to the law and the evidence. In the court below, he did not ask for a peremptory instruction, but urges here that the conviction rests alone upon the uncorroborated testimony of an accomplice, which evidence, he argues, is unworthy of belief. This court has uniformly held that the uncorroborated testimony of an accomplice is sufficient to support a conviction, beginning with the case of Keithler v. State, 10 Smedes & M. 192, and including Boutwell v. State, 165 Miss. 16, 143 So. 479. But the court has also held that such testimony of such an accomplice should be viewed with great caution and suspicion. White v. State, 146 Miss. 815, 112 So. 27; and the rule has also been that the testimony of an accomplice should not be improbable or self-contradictory on its face, White v. State, supra.

We have not set out at length all the testimony of the accomplice, Hughey, but we do say that all of it reveals that Hughey, who had pleaded guilty to the crime at first, then detailed a state of facts which would absolve himself and involve others. He had sworn that he confessedly pleaded guilty to the crime of arson six months before; that he had been sentenced by the court to the penitentiary, and yet he had remained all that time at the home of a deputy sheriff. Before his indictment, he had gone into the court of Dr. Ward and sworn unequivocally that he knew nothing relative to the burning of the barn. His testimony that these three white men

compelled him to go to the gate near the barn and witness their crime is so unreasonable and so improbable that we do not feel that a conviction should stand thereon. The only corroboration as to any threat is asserted by the owner of the barn, but that is denied by the appellant. Why would these three white men desire to carry this negro, hold him under compulsion, and compel him to witness a crime of this magnitude? We say that the evidence of this accomplice was unreasonable and unnatural. The evidence interposed by the appellant was unimpeached, intelligently given, and was, perhaps, the only evidence which could be offered as to this particular crime by a man who was at home with his family.

The testimony of the accomplice in the trial of this case was shown to be a flat contradiction of the testimony given by him on the preliminary hearing. The evidence in this case of the accomplice is contradictory, unnatural, and unreasonable.

Under the facts disclosed by the record, we deem it to be our duty to reverse and remand this case that it may be submitted to another jury.

As to Sanders' evidence of a threat made only to him by the appellant, this evidence alone is insufficient. Luker v. State (Miss.), 14 So. 259; Strong v. State (Miss.), 23 So. 392.

We leave out of view the evidence of a convict witness for the appellant that Hughey was struck and threatened by the officers before he changed his testimony, this occurring after the first hearing and before the second, as this was denied by Hughey and by the sheriff.

Reversed and remanded.