WILLIAMS *v.* STATE.

April 26, 1954

No. 39139 62 Adv. S. 15 72 So. 2d 147

*A. T. Patterson, W. W. Brown,* Calhoun City, for appellant.

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Appellant, Mrs. Jewel Williams, was convicted in the Circuit Court of Calhoun County of arson, first degree, under Code of 1942, Sec. 2006, which provides that ''any

person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any'' designated building, shall be guilty of arson in the first degree. She was sentenced to serve a term of two years in the state penitentiary. On this appeal we consider only two points, since they will dispose of the case. The evidence was wholly insufficient to support a conviction, and appellant should have been granted her requested peremptory instruction. Some detailed analysis of the testimony is necessary in order to demonstrate our reasons for these conclusions.

Appellant is a white woman sixty-three years of age. She is a widow, her husband having died several years prior to the fire in question. For about twenty-one years she has owned a small building on the southeast corner of the square in Calhoun City, facing north. The front part of this building is of brick construction, and was used as a cafe, operated by Mrs. Williams. The east and south sides of the building, of wood construction, contained five bedrooms and a bath. These were added by appellant to the original brick structure a number of years ago. The fire occurred around 11 P. M. on Sunday night, December 7, 1952. Apparently the building, particularly the living quarters in the rear, was substantially damaged by the fire.

The State's case was based upon the testimony of two principal witnesses, Miss Gene Davis and Glenis Coker. Miss Davis testified that she had been working as a waitress in the Williams Cafe for about three months prior to the fire. She lived in a room in the cafe building. She said that Mrs. Williams had one of those rooms, Miss Neamy Wooten, a sister of appellant, occupied another, the witness occupied a third and the other two were rented to Fred Sheffield and Lloyd Vance. On the Sunday night in question she left the cafe about 6 or 6:30 P. M., at which time Mrs. Williams was there. She returned about 9 or 9:30 P. M., and saw some newspapers on the floor in the bathroom and on the front

door of the cafe. She asked appellant about the papers, and appellant replied that she had done that a number of times. The witness stated that she thought that she would go to bed, but Mrs. Williams said no, that she was not going to stay there that night and told the witness not to remain over night. The witness then started to go out the back door, and Mrs. Williams told her to go to the front. The building was heated by natural gas, and Miss Davis had never seen any coal oil in it. During the three months Miss Davis was working at the cafe, she said that appellant came in a number of times and carried things up to Memphis, including her clothes. She said that she saw appellant the day after the fire, and on that and a number of other occasions after the fire, appellant told her if someone came to see her about the fire, to tell them that she did not know anything about it.

Miss Davis stated that she had asked appellant to let her off that night, and appellant had agreed; and that whenever she stayed at the cafe at night, with one exception, either appellant or Miss Neamy, appellant's sister, would be there. At the time of the fire Miss Neamy had been in Memphis for several days. There was no shade over the glass front door, only the newspaper. She said that during the period she was working there appellant made a number of trips to Memphis, where her daughter-in-law and grandson lived. Appellant's son had died several years before the fire. Miss Davis said that the general understanding was that appellant was living in Memphis; that she was away for some little time, and for part of this period Mrs. Barker had charge of the cafe for Mrs. Williams, and for part of this period the witness would run the cafe, and Mrs. Williams would come back on weekends to see about it; and that Mrs. Williams had told her a number of times that she was broke.

The other principal witness for the State was Glenis Coker, a white man thirty-eight years of age, who lived

near Calhoun City. He cannot read or write. Coker testified that on December 7, 1952, he was living at the home of Shine Collins, apparently a short distance out of Calhoun City; that on that Sunday night he and Collins came to town, met Mose Sheffield in their truck, and left and got some whiskey, which they drank, and they then went back to town. They parked on the side of the street and "Mose told Shine he wanted to talk to me a little bit." The jury was then retired, and the testimony to be hereinafter quoted was presented to the court in the jury's absence. Appellant made proper objections, which were overruled. Coker was permitted to testify before the jury as follows:

"By: DISTRICT ATTORNEY:

"Q. Glenis, I believe when the jury left you were testifying about Shine Collins leaving the truck and Mose said something to you, what did he want you to do?

"A. To go and get some coal oil.

"Q. Why did he want you to get it?

"A. Mrs. Williams was going to give him $200.00 to burn the building.

"Objected to his stating what someone wanted him to do, but state· what he said.

"By the COURT: That is right, state what was said or done.

"By: DISTRICT ATTORNEY:

"Q. What did Mose tell you about Mrs. Williams, if anything?

"A. He told me she wanted the place burned.

"Q. And what would she give him to burn it?

"A. Two hundred dollars.

"Q. And what did he tell you?

"A. That she would give me ten dollars and he would give me one dollar to go and get the oil."

The trial court ruled that this testimony was admissible as being part of the "res gestae", and that anything that happened that night concerning the crime is "part of the res gestae regardless of who said it . . ."

Coker further testified that he went down to a filling station and purchased some coal oil, and also bought some more whiskey. He carried the coal oil through the back door of the Williams building. Sheffield stepped outside for a few minutes, and Coker lay down on the bed. Sheffield came back in and told Coker to get up and go on out to the truck, which he did. Coker said as he was leaving he stepped on some newspapers on the floor, upon which there was coal oil, with a pretty strong odor; and that he also saw oil on the bed. He stated that he did not see Mrs. Williams leave the building. Sheffield told him not to say anything about what had occurred. He, Sheffield and Collins left in the truck together. He said that when they left the cafe, Mrs. Williams was there. He was not able to place the time of night or when he, Sheffield and Collins left the cafe, but said it was "getting pretty late" and that it was "probably late in the night." He denied that while he was there around 9 P. M. a man came to the door and asked him where Mrs. Williams was, and denied that he told the man that she was up at her sister's, Mrs. Hyde's home. He did not talk to Mrs. Williams, and did not know of any conversation with her by Sheffield or Collins. Coker said he was not drunk but was drinking.

The city marshal testified that two weeks after the fire he found a five gallon tin can on the ground immediately behind the small bathroom in the dwelling part of the house. He did not know whether the can was there before the fire or whether it was placed there after the fire. The only part of the building burned close to the floor was in the extreme back room. The balance of the fire's destruction seemed to be from about two feet from the floor up to the ceiling. There was a clothes cleaning establishment about ten feet to the east of the Williams Cafe. Two witnesses for the State testified that the fire was rather an odd one, in that it would burn awhile at the back, and when that would seem to be pretty well

extinguished, the fire would move to the front, and that while they were fighting the fire that night, the odor of kerosene in the building was strong. Appellant had fire insurance in the amount of $8,000 on the building, and $2,000 on its contents.

For the defense, Mrs. Jewel Williams testified that when she was in town she occupied a bedroom east of the cafe area; that she had been back home from Memphis in active charge of the cafe for about a week; that prior to that time and since September she had been staying in Memphis with her grandson, four and one-half years of age, and her daughter-in-law. She closed the cafe that Sunday night around 6 P. M. and stayed there until 8 P. M., during which period she was cleaning the place up. Another woman was helping her, but she was unavailable at the trial. Mrs. Williams said that Miss Davis did not work on that Sunday, and that the last time she saw her that night was about 8 o'clock. She put the papers over the door to keep people from coming in while she was working. She had put papers in the bathroom for sanitary purposes. There were no papers spread on any other floors. She denied that she burned, or caused anyone else to burn, the building; and denied that she had any conversation with Sheffield or anyone else about burning it. She said that one Spencer had offered her $10,000 cash for the cafe about two months before it burned. She said that she left the building about 8 P. M. and went to the home of her sister in Calhoun City, Mrs. Hugh Hyde, where she remained until 2 A. M., Monday morning, when she was taken to the hospital. She was at Mrs. Hyde's house when her sister, Miss Neamy, her grandson, and Sam Huffstickler of Memphis arrived at the Hydes' home at about 9 P. M. that Sunday night. They had driven down from Memphis that evening.

Mrs. Williams has diabetes, and shortly after 11 P. M. her sister, Miss Neamy, telephoned Dr. L. D. Webb re-

questing him to come to the Hydes' home to see appellant. She denied telling Miss Davis that if anyone asked her about the fire to say that she knew nothing of it. She was not interrogated concerning the cause of the fire until the next month, January 1953. She denied that she told Miss Davis that she could not stay there that night, and that she told her to go out the front door. She said that Miss Davis left the cafe about 6 P. M. and returned shortly before 8 P. M., after which she left again. She went to Memphis to stay with her grandson while her daughter-in-law worked, and that was the reason, she said, that she was taking some of her clothes up there. She had virtually moved to Memphis at the time of the fire. She had deposited her safe where she kept some money and personal belongings, including letters from her son before his death, in the store of Hugh Brower, her brother-in-law. Appellant said that she had removed it from the cafe building because someone previously had opened it and removed some of its contents. Appellant bought the small brick building in which the cafe was located in 1932 for about $600, and in later years spent about $4,500 to add the additional rooms. Although Miss Davis said that Sheffield was rooming there, Mrs. Williams denied that. She said that Sheffield and Collins were eating in the cafe before it closed around 6 P. M., and that was the last time she saw them. She denied that she was in bad financial circumstances. Her son's $10,000 insurance policy gave her a monthly income of about $60, and her husband had left her about $1,000 in insurance when he died two years before the fire. She said that she kept a one-gallon jug of coal oil in the building, to light lamps when the current went off, as it frequently did.

Dr. L. D. Webb confirmed defendant's testimony that he was at the Hyde home that night about 11:40 P. M. He said appellant's blood pressure and pulse were up some, her temperature normal, and that she complained

of general pain. He gave her some insulin. Four witnesses testified for defendant that they were at the fire and did not smell any odor of coal oil coming from it. Mr. and Mrs. Hugh Hyde, Miss Neamy Wooten and Sam Huffstickler supported appellant's alibi that she was at the Hyde home from 8 o'clock that night until after the fire. Mr. Hyde is the owner of a grocery store in Calhoun City. Huffstickler lived in Memphis, and rented an apartment there to Mrs. Williams, her daughter-in-law and grandson. Miss Neamy had been staying in Memphis with the grandson, and Huffstickler drove her and the child down to Calhoun City from Memphis. He testified that they arrived at the cafe at 9 P. M., that he went to the back door, it was locked, and seeing a light, he walked to the window and knocked, asking for Mrs. Williams. Three men were there, one of them laying on a bed smoking a cigarette. They told him that he might find appellant at the Hyde home, and he then drove Miss Neamy and the grandson to the Hydes. He remained there about 45 minutes, apparently returning then to Memphis.

On rebuttal for the State, Homer Edgeworth, an employee of the State Fire Marshal, testified that in January, 1953 he was investigating the fire; that Mrs. Williams was called to the courthouse for interrogation, and she asked him that if she would drop the insurance claim, whether they would forget about "this whole mess, I don't want to go to court." Mrs. Williams stated that she did not remember asking that.

██ ██ The foregoing is a summary of the evidence. The first question is whether the court erred in permitting Glenis Coker to testify as quoted above: that Sheffield told him that Mrs. Williams was going to give him $200 to burn the building, and told him that Mrs. Williams stated to Sheffield that she wanted the place burned, and that Sheffield said that Mrs. Williams said that she would give Coker $10 to go get the coal oil. The trial court

ruled that this was part of the res gestae. However, we think that this testimony was inadmissible hearsay, and since it was the only evidence which tended to connect appellant with the alleged crime, its admission was reversible error. That class of evidence designated as an exception to the hearsay rule, being the "rule of res gestae," includes acts and words which are so closely connected with the crime or the facts in issue as to constitute a part of the transaction itself. The acts and words must be spontaneous, and so closely related in time to the occurrence in question as reasonably to appear to be evoked and prompted by it. 20 Am. Jur., Evidence, Sec. 662. In the absence of these conditions, there is no guaranty of its trustworthiness. It is only a limited type of exception to the hearsay rule. The peculiar conditions applicable to that exception are manifestly not pertinent to the testimony of Coker as to what Sheffield told him that Mrs. Williams told Sheffield. Illustrative cases condemning somewhat similar testimony are Williams v. State, 79 Miss. 555, 31 So. 197 (1902), and Walker v. State, 135 Miss. 422, 100 So. 9 (1924). So this testimony was inadmissible, and its admission without doubt was the principal instrument in the conviction. Moreover, it could not be made admissible on another trial.

In the absence of the testimony of Coker referred to above, none of the State's witnesses connected appellant with the burning of the building. The testimony of Miss Davis does not do so, nor does that of Coker. The State's evidence is wholly circumstantial, and could create, if anything, only a suspicion of guilt in the minds of the jury. But where the evidence is wholly circumstantial, the rule is that the defendant must be proved guilty not only beyond a reasonable doubt, but also to the exclusion of every other reasonable hypothesis consistent with her innocence. Hardy v. State, 177 Miss. 727, 172 So. 131 (1937); Warren v. State, 166 Miss. 284, 146 So. 449 (1933). Yet practically all of the State's evidence is

consistent with appellant's innocence. She had removed some of her clothing from the building. It is undisputed that she had practically moved to Memphis with her daughter-in-law and grandson, coming back only at intervals to check up on the cafe. The paper was on the floor in the bathroom for sanitary purposes and on the glass front door of the cafe as a screen. Coker's testimony, other than the hearsay which should have been excluded, was most ambiguous and unsatisfactory. He is illiterate, and was in an admitted drunken condition that night. He could not even approximate when he was at the cafe building, saying only that it was "pretty late." He did testify that he saw some coal oil on the newspapers, but there is no testimony that Mrs. Williams put it there. Nor is there any admissible evidence that she purchased any coal oil, either by herself or by an agent, other than her statement that she had a one-gallon jug which she used in lamps when the lights went out. There is no evidence which would warrant the jury in finding that she hired Sheffield, Collins or Coker to either burn the building or to help her to do it. Some of the proof, if accepted as true, such as that she was moving to Memphis, and the statements of Miss Davis that appellant told her to deny any knowledge of anything on the night of the fire and to go out the front door, might well create a suspicion of guilt, but she cannot be convicted on suspicion.

We have considered carefully in several conferences the evidence in this case, and have concluded that, excluding Coker's inadmissible hearsay testimony, there is not enough evidence to go to the jury on the issue of guilt vel non; that there is no evidence of any logical probative value to connect appellant with the alleged offense; and that therefore she was entitled to her requested peremptory instruction. So the judgment of the trial court is reversed, and judgment is rendered here discharging appellant. Compare Luker v. State, 14 So. 259 (Miss.

1894) ; Strong v. State, 23 So. 392 (Miss. 1898) ; Bolden v. State, 98 Miss. 723, 54 So. 241 (1911) ; Ratcliff v. State, 99 Miss. 277, 54 So. 947 (1911) ; Holloman v. State, 151 Miss. 202, 117 So. 532 (1928) ; Rutledge v. State, 171 Miss. 311, 157 So. 907 (1934).

Reversed and judgment rendered discharging appellant.

*Roberds, P. J.,* and *Lee, Holmes* and *Arrington, JJ.,* concur.