Mrs. Jewell WILLIAMS (now Mrs. Jewell Williams Evans), Appellant,

v.

CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY and Grain Dealers Mutual Insurance Company, Appellees.

No. 15624.

United States Court of Appeals Fifth Circuit.

Feb. 29, 1956.

Phil Stone, Oxford, Miss., Joe T. Patterson, Asst. Atty. Gen., James Stone & Sons, Oxford, Miss., for appellant.

Thos. H. Watkins, Jackson, Miss., Chester L. Sumners, Oxford, Miss., P. H. Eager, Jr., Jackson, Miss., for appellees.

Before BORAH, TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is a suit on two insurance policies for fire damage to the appellant's cafe-dwelling in Calhoun City, Mississippi. The trial court found that the appellant herself intentionally burned the building or procured its destruction, and granted judgment for the appellee insurance companies. She assigns as error on appeal both this finding of fact by the court, sitting without a jury, and the refusal of the trial court to exclude evidence tending to implicate her as the arsonist, on her theory that the insurance companies were estopped from raising that issue by the earlier decision of the Supreme Court of Mississippi, reversing her criminal conviction of arson.[1]

With regard to the latter question, she argues that although both the parties and the burden of proof are here different from those in the criminal case, the finding of fact by the Supreme Court of Mississippi that she did not burn the building is a final determination of that issue in the criminal case and in all subsequent adjudications. We do not read the opinion in Williams v. State of Mississippi, 220 Miss. 800, 72 So.2d 147, as establishing the appellant's innocence as a matter of fact; rather, the Supreme Court there held that since the prosecution's competent evidence was wholly circumstantial in character, and did not exclude every reasonable hypothesis except guilt, the accused's motion for a peremptory instruction should have been granted. The appellant, as defendant in a criminal prosecution, was of course entitled to this safeguard of the criminal law, but as plaintiff in a civil action, she could not claim the same advantage.

Moreover, even had the Supreme Court of Mississippi found that the appellant did not intentionally burn the building, that finding would bind only the parties to that case, and their privies. The appellant urges here that by the doctrine of collateral estoppel, it should also bind the appellee insurance companies. Collateral estoppel is broader than res judicata in holding that an issue determined in one suit between the parties thereto may not be relitigated in a later action between the same parties or their privies, even though the second suit is based on an entirely separate transaction. For the finding to be conclusive in the later action, however, it is fundamental that the parties must be the same or in privity to those in the first suit, and none of the authorities which appellant urges here shows any departure from this rule by the Mississippi courts. To the contrary, the Supreme Court of Mississippi has held that a jury verdict of not guilty on a criminal charge is not admissible evidence in a later civil action brought by a private individual against the same defendant, for damages arising out of the same incident. Young v. Davis, 174 Miss. 435, 164 So. 586. Therefore, the reversal of the appellant's conviction of arson not only failed conclusively to determine this issue in the case before us, but it was also irrelevant to the question.

Having overruled the plaintiff's motion, made at the outset of the trial, to exclude evidence tending to show that she intentionally burned the building, the court went on to hear evidence on this and other issues raised by the defendants' answer.[2] It appears that the

---

1. Williams v. State of Mississippi, 220 Miss. 800, 72 So.2d 147.

2. The answer pleaded four defenses: (1) that the plaintiff procured the destruction of the property and did not give the defendants' agents all the information she possessed as to the cause and origin of the fire; (2) that the plaintiff increased the hazard of fire in the building and neglected to use all reasonable means to preserve the property from fire; (3) that the plaintiff wilfully concealed or misrepresented material facts concerning the insurance or the subject thereof; (4)

building, which faced on the public square in Calhoun City, was largely of brick, with the wooden additions of five bedrooms and a porch. The plaintiff occupied one of the bedrooms, and another was vacant; the other three were occupied, respectively, by Miss Neamy Wooten, the plaintiff's sister, Miss Jean Davis, a waitress, and Lloyd Vance, a roomer. The fire occurred on Sunday evening, December 7, 1952, when none of the residents was present therein. By stipulation among the parties, the testimony of some of the volunteer firemen at the criminal trial was introduced in evidence, and they agreed that the fire

that the plaintiff had been convicted of arson, and that the condition was res judicata on the issue of intentional burning.

The fourth defense was of course rendered invalid by the decision in Williams v. State of Mississippi, 220 Miss. 800, 72 So.2d 147. At the conclusion of the defendants' evidence, the plaintiff moved for a summary judgment. In overruling the motion, the court observed:

"The Court: As the evidence now stands, and the question of whether or not this woman burned or was a party to the burning of her house, I don't think the motion is well taken. I don't see frankly, anything in the proposition that she increased the risk any, by the evidence which insofar as this record goes, shows.

"I haven't read some of these documents that you introduced with reference to any false statements, but I don't think the evidence as it now stands would sustain the motion of a question of whether or not she was a party to or the actual party to the burning of the house. The motion would be overruled.

"By Mr. Stone: As I understand the Court to rule, that the only issue left before [us] is the one just stated by the Court.

"The Court: I'm not prepared to say on the question of the false statements, because certain documents which have not been read to the Court, I don't know what they contain, I haven't yet been informed as to what might be in those documents.

"By Mr. Watkins: Your Honor is not ruling on the increased hazard? If you are, may I say this, that when Mr. Coker testified that he came out—

"The Court: I'm not directing what I have said as to that, that goes along with the question of whether she knowingly burned or permitted the building to be burned, it's a mere fact that the woman had a gallon of coal oil in the building, that is no evidence of an increased risk, as I see it.

"By Mr. Watkins: But she knew of the existence of it and knew that by the exercise of reasonable care, that that risk could be removed.

"The Court: Well, I am not meaning to rule that out, if you are relying on that back there, that increased risk, but I don't think that it does show any increased risk according to the testimony now before me.

"Mr. Stone: No, sir, we have some rebuttal testimony, if the Court please.

"The Court: Very well.

"Mr. Stone: We will call Mrs. Jewell Williams in rebuttal."

After the plaintiff's evidence in rebuttal was received, the court commented on the evidence and concluded:

"I cannot reconcile those facts together with the facts that certain other witnesses have testified to, that is as to the strong odor of coal oil or kerosene, while others testified they did not smell any coal oil or kerosene, that possibly on the one hand is positive testimony, and there is negative testimony on the other hand.

"I can't reconcile these facts, as I conceive them to be in this case, with the innocence of the Plaintiff in the case, in connection with the fire.

"I can't conceive that any two or three men would go into a place at that time, in nighttime, with some three gallons of coal oil, and with all the facts and circumstances that have been brought out in this case, for any reason other than to use that coal oil or kerosene for an ulterior purpose, and I therefore conclude that the Defendant has met the burden to show that there was guilty knowledge on the part of the Plaintiff in this case.

"The judgment of the Court would be for the defendant insurance company."

No formal findings of fact and conclusions of law were entered, and we conclude that the court did not base its decision on the ground that the plaintiff increased the hazard. Whether these latter remarks by the court justify the inference that it found that the plaintiff had wilfully concealed material facts concerning the fire is a closer question; but since counsel do not argue the point, we will consider the judgment as based solely on the finding that the plaintiff burned the building or procured its destruction.

was a very unusual one, in that although apparently extinguished in various parts of the building, it would flare up again in these same places, seemingly without cause; and, further, that there was a strong odor of petroleum products in the building.

Beyond these facts, there was a sharp conflict of testimony regarding the circumstances leading up to the fire. The trial court stated that in attempting to resolve this conflict, it relied largely on the testimony of Miss Jean Davis, to whose testimony it gave greater credibility than to that of other witnesses, including the plaintiff. Miss Davis testified that she worked as a waitress in the cafe and had a room in the back; that the plaintiff had told her a number of times that she was broke; and that the plaintiff had rented an apartment in Memphis, with her daughter-in-law and grandson, and had moved most of her belongings out of the cafe prior to the fire. She testified further that on the night of the fire she told the plaintiff that she was going to stay with her mother that night, but instead changed her mind and returned to the cafe about 9:00 P.M.; that the plaintiff was there, and was surprised to see her; that she told the plaintiff that she was going to stay in her room in the building that night, but that the plaintiff said that she couldn't; that there were papers on the floor and over the front door, which had never been the case before; that she heard voices in the back, although the cafe was closed; that she started to go out the back, as she had come in, but the plaintiff told her to go out the front, and she did so. The witness also testified that after the fire the plaintiff was ill and in the hospital and that she visited her; that the plaintiff cried and said, "You know nothing about this or anything," and added, "It might be a mess"; that after the plaintiff recovered she sent for the witness, took her aside, and said, "You don't know nothing about it, if someone talks to you, you don't know a damn thing." Another witness testified that three gallons of coal oil were delivered to the building on the night of December 7, 1952, before the fire.

In rebuttal, the plaintiff denied making any of the remarks attributed to her by Miss Davis. She further denied that anyone was in the building on the night of the fire except herself and Miss Davis, and denied the delivery of coal oil. She fixed the time of her departure from the cafe at about 8:00. Her testimony in this latter respect was corroborated by her sister and her brother-in-law, who testified that the plaintiff came to their house that evening at 8:10 or 8:15. Another witness, also a sister of the plaintiff, testified that she went to the cafe at about 9:00 o'clock on the night in question, and found it closed, with the plaintiff having already left.

In considering the evidence, the trial court observed that Miss Davis was "a reluctant witness" who apparently bore no ill feeling toward the plaintiff, while contradictory testimony came from the plaintiff herself and members of her family, whose exactness in question of time could be doubted. It stated:

"I base the decision of the Court on the testimony of Miss Davis and Coker * * * and of the other witnesses who testified what they saw there at the fire * * * I would not, except for the testimony of Miss Davis, in this case, be inclined to put too much credit and too much faith on the testimony of the man Coker; but her testimony absolutely dovetails in and corroborates to a very large extent what he said about this case."

The appellant in her brief cites a number of cases involving insurance claims where the insured prevailed against apparently stronger evidence or with the weight of the evidence apparently more heavily in favor of the insurer. This court cannot, however, reweigh the evidence and determine on appeal where the preponderance of the evidence lies. It was the duty of the trial court to reconcile the testimony of all the witnesses, if possible, without imputing perjury to any of them; but

faced with a plain conflict of testimony, it was the sole judge of what to accept and what to reject.

We cannot say that, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses,[3] the finding that the plaintiff herself burned the building was clearly erroneous. There was uncontradicted evidence that the fire was of incendiary origin. There was testimony showing very suspicious behavior on the plaintiff's part on the night of the fire, and admissions thereafter very nearly confessing her guilt. In rebuttal, she offered her own denials, an alibi corroborated by her relatives, and an impeachment by character witnesses of one of the defendants' witnesses. If the defendants' witnesses are to be believed, their testimony clearly justifies the trial court's finding. We are not persuaded that the court erred in accepting their testimony and rejecting that of the appellant's witnesses. See United States v. Yellow Cab Co., 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150.

The judgment is

Affirmed.

---

3. Rule 52(a), Fed.Rules Civ.Proc. 28 U.S.C.A.