The AETNA CASUALTY AND SURETY COMPANY, Plaintiff-Appellee,

v.

Gwindle G. GOSDIN, Defendant-Appellant.

No. 85–8781.

United States Court of Appeals, Eleventh Circuit.

Nov. 10, 1986.

---

Lee Sexton, William H. Turner, Jonesboro, Ga., for defendant-appellant.

Burton L. Tillman, Jr., Atlanta, Ga., for plaintiff-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

CLARK, Circuit Judge.

In this typical fire insurance case in which the insurance company claimed that the policyholder committed arson, the policyholder appeals from a jury verdict in favor of the company. In its action for declaratory judgment to settle all claims on the policy, the company presented no direct evidence linking the policyholder to the fire, but did mount a case of circumstantial

evidence that would permit the jury to return a verdict in its favor. Beyond the evidence relating to the arson, however, the insurance company presented, in its opening case as plaintiff, evidence of unrelated burglary, pimping, pandering, and drug charges that had been brought against the defendant in the months and years before the fire. The evidence of the charges, according to the insurance company, was presented in defense of a counterclaim of bad faith; it is this evidence that the appellant policyholder challenges. Because we cannot say that this unduly prejudicial evidence did not affect the jury's ultimate decision, we must vacate the judgment below and remand this case for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of May 10, 1983, a small shopping center in Fulton County, Georgia, was substantially damaged by fire. At the time of the fire, the appellant in this case, Gwindle G. Gosdin, owned the shopping center and maintained a fire insurance policy with the appellee, Aetna Casualty and Surety Company. Following the fire, Gosdin filed a claim with Aetna. Aetna investigated the fire, and found evidence suggesting that Gosdin had set the fire himself. Aetna refused to pay Gosdin's claim, and on April 24, 1984, Aetna filed in the district court an action for declaratory judgment to have its rights and obligations adjudicated in connection with the insurance policy. Gosdin filed a counterclaim for bad faith penalties and attorney's fees under Georgia law.[1]

### A. *Aetna's Case*

In its case in chief, Aetna presented both evidence suggesting that Gosdin had set the fire *and* evidence defending against Gosdin's as yet unpresented bad faith claim.

While both sides conceded that the fire had been intentionally set, Aetna presented extensive evidence of the arson. The fire had multiple points of origin, and evidence of flammable liquids was found at a number of the points of origin, including an office/storage area used by Gosdin and a florist shop for which Gosdin had a key. Both the county's and Aetna's fire investigators testified that the fire was arson.

Aetna's circumstantial evidence of Gosdin's involvement in the fire was substantial. All of the points of origin of the fire were in areas to which Gosdin had keys. There was no evidence of any forcible entry into the building. Although he was seldom at the shopping center, the day before the fire he was at the center and in the storage area where part of the fire started.

Aetna presented evidence that Gosdin's financial situation was precarious, that Gosdin owed back taxes on various properties, that no tenant in the building stood to benefit substantially from any fire insurance proceeds, and that Gosdin benefited from a separate fire insurance policy. The evidence suggests that Gosdin may have learned prior to the fire that one of the tenants in the shopping center, the flower shop, was cancelling its lease,[2] thus presenting the prospect of reduced revenue from the building. Beyond his policy with Aetna, Gosdin was also the loss payee of a fire policy on the inventory of a grocery store in the shopping center, and he received $20,000 from that policy. Aetna presented evidence that, three days before the fire, Gosdin had contacted the grocery store's insurance agent to confirm that the policy on the inventory was still in effect

---

1. In relevant part, the state statute reads:

    In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 25 percent of the liability of the insurer for the loss and all reasonable attorney's fees for the prosecution of the action against the insurer.

    Ga.Code Ann. § 33-4-6 (1982).

2. The owners of the florist business, wiped out by the fire, were uninsured for fire loss.

and that Gosdin was still the loss payee; Gosdin learned that the insurance policy was due to expire on May 15, 1983, five days after the fire.

Aetna presented testimony detailing how, during two sworn depositions taken pursuant to a clause in Gosdin's insurance policy, Gosdin had made a number of false statements and statements directly conflicting with evidence presented to the jury. In these depositions, Gosdin claimed that he did not have keys to the building (although he later admitted that he did), that he had not been in the building the day before the fire, that he had called to check on the grocery store insurance policy weeks, not days, before the fire, and that he did not learn about the intention of the florist shop to vacate the premises until three days after the fire (even though the evidence later showed that he had received the notice by the day after the fire at the latest).

Finally, in part to show Gosdin's financial need at the time of the fire and in part to demonstrate the good faith doubts Aetna had about the insurance claim, Aetna presented testimony revealing that just before the fire Gosdin had been released on bond from pending burglary charges. Aetna's argument was that Gosdin needed money to fund his criminal defense. Gosdin's attorney objected and moved for a mistrial. The motion was denied, in part because Gosdin's attorney himself had mentioned the burglary charge in his opening statement. Aetna's witness then continued to testify that Gosdin had in the past faced charges of pimping, pandering, possession of drugs, and distribution of drugs.[3]

### B. *Gosdin's Case and This Appeal*

Gosdin presented evidence suggesting that Marion Davis, the owner of the grocery store who did not get along well with Gosdin, might have set the fire. A neighbor of the building testified that when the neighbor had called at 3:00 a.m. to inform the owner and tenants of the fire then raging, Gosdin had sounded asleep while Davis sounded wide awake. Davis was called to the stand and admitted having bad relations with Gosdin. A woman with whom Gosdin was living testified that Gosdin was upset when he received the news of the fire. Gosdin himself testified that he was in sound financial condition at the time of the fire, that the storage room where part of the fire started was used by a tenant to store paint, and that contrary to testimony by Aetna's witnesses, he had promptly reported the fire to Aetna.

Relevant to this appeal, the record reveals that Gosdin's attorney mentioned the burglary charges during his opening argu-

---

3. Although the criminal charges were mentioned a number of times throughout the trial, the primary discussion of the charges occurred during the testimony of Aetna's chief investigator, Mr. McAfee:

[AETNA'S ATTORNEY:] ... What other circumstances came to your attention in your investigation that was pertinent to your decisionmaking process?

[MR. McAFEE:] I'm not sure that I can remember all of them, but we learned very early on that Mr. Gosdin had a number of criminal cases pending or had been arrested on numerous criminal charges. In fact, had been released from jail on bond.

....

[Objection and motion for a mistrial by Gosdin's attorney; the trial court denied the motion.]

[AETNA'S ATTORNEY:] Mr. McAfee, we were discussing the relevance or emphasis that you may put on this case due to knowledge as to Mr. Gosdin's criminal record.

Can you tell us a little bit more about what came to your attention in that regard?

[MR. McAFEE:] Initially, I think I learned simply that he had been arrested and was perhaps out on bond ... just immediately or very shortly before the fire occurred.

We subsequently learned of various other charges that had been made and that were pending. I know there were burglary charges, in three different counties I understand. There were charges of pimping and pandering and the possession of, distribution of illegal drugs.

I don't recall if that's all of them or not, but I know there were a fairly extensive list of things.

[AETNA'S ATTORNEY:] All right, sir. Were these things relevant to your determination of the course of action that Aetna should take in this case?

[MR. McAFEE:] Yes, I think that they were. Record, Vol. IV, at 222–23, 225–26.

ment in explanation that Gosdin was upset and distracted by the criminal charges when he made the misstatements in the Aetna depositions. On the witness stand, Gosdin himself volunteered the fact that he had just been released from jail at the time of the depositions, and that the burglary charges had resulted in a conviction.

Based on this evidence, the jury found for Aetna. On this appeal, Gosdin raised three objections. He challenges the admission of evidence about the criminal charges; he challenges the refusal by the trial court to permit him to present evidence indicating that he was never charged or convicted of arson in this case; and Gosdin challenges the removal by the court of a juror whose daughter had been a client of a law partner of Gosdin's attorney. Because of our resolution of the first issue, we are not required to reach the other two issues, but in the interest of judicial efficiency, we will also briefly discuss the second claim.

## II. ADMISSION OF EVIDENCE OF UNRELATED CRIMINAL CHARGES

Gosdin argues that the evidence of criminal charges brought against him should not have been admitted at trial; he suggests that the evidence was unduly prejudicial. As Gosdin claims in simple terms, he "had no chance of recovery, regardless of the merits of the case, once [Aetna] was allowed to brand him a Burglar, a Pimp, a Panderer and a dope fiend." Appellant's Brief at 21. Aetna's response is that this evidence spoke to the question of Aetna's good or bad faith in handling the insurance claim.

Our analysis of this dispute, however, is made difficult by the fact that Aetna presented in its case in chief its defense of

Gosdin's counterclaim for bad faith. Aetna's witnesses testified at the same time about matters concerning the underlying question of whether Gosdin committed arson *and* about matters concerning the collateral question of whether Aetna acted in bad faith in denying the claim. Because the distinction between these two issues was blurred before the jury, we must carefully consider what effect the evidence might have had on the jury in its consideration of the ultimate question of the arson.[4]

### A. *Bad Faith Claim Defenses*

As a threshold matter, we must consider whether Georgia law includes any special considerations about defending bad faith claims that should encourage this court to set aside our normal concerns about prejudicial evidence. Aetna argues that, in defending against a bad faith claim, an insurance company "has the right ... to present to the jury *the complete and total* evidentiary picture brought forth in its investigation supporting its refusal to pay the subject claim to show that it had a reasonable ground therefore." Appellee's Brief at 19 (emphasis added) (citing *Hartford Fire Insurance Co. v. Lewis*, 112 Ga.App. 1, 143 S.E.2d 556 (1965)).

■ The majority opinion in the *Hartford* case, however, only briefly analyzes the bad faith issue and does not discuss the question of what evidence the insurance company can present. 143 S.E.2d at 558.[5] A Georgia Supreme Court case, cited but not quoted by Aetna, is more enlightening than the *Hartford* case. "The question of good or bad faith on the part of the insurance company, in refusing to make payment to the beneficiary, can only be determined from evidence that is *relevant and admissible* for a determination of the case

---

**4.** Our problem is illustrated by a comment made by the district court at the end of Aetna's case, when Aetna was unsuccessfully attempting to have certified copies of the pimping, pandering, and drug charges admitted into evidence:

Generally, it says that bad faith must be proven by the insured, and I think we are getting into a lot of trouble by your doing it on your direct case rather than waiting for the insured to come in and make the claim and then you deny it.

Record, Vol. IV, at 253.

**5.** One dissenting judge in the *Hartford* case did more fully consider the burden of an insurance company to present a defense to a claim of bad faith, but that judge does not suggest, as Aetna does, that an insurance company can present *any* evidence in defense of a bad faith claim. 143 S.E.2d at 564.

on its merits." *Interstate Life and Accident Insurance Co. v. Williamson,* 220 Ga. 323, 138 S.E.2d 668, 669 (1964) (emphasis added) (citation omitted). In other Georgia cases, courts have excluded prejudicial evidence in bad faith insurance litigation. *See, e.g., Northern Assurance Company of America v. Roll,* 176 Ga.App. 893, 338 S.E.2d 870, 871–72 (1985) (trial court "did not err in excluding testimony concerning the sexual preferences of [the insured]. The proffered evidence was irrelevant and prejudicial; it had no bearing on the issues in this case."). Thus, it is clear that insurance companies defending against bad faith claims are constrained by normal evidentiary concerns.

### B. *Admissibility of the Evidence*

In considering the admissibility of evidence of criminal charges brought against Gosdin, we must differentiate between evidence of the burglary charges and evidence of the pimping, pandering, and drug charges.

#### 1. *Burglary Charges*

■ What initially sets off the burglary charges from the rest is that Gosdin's counsel was the first to mention them, in his opening statement. That information was presented, both in the opening statement and in Gosdin's own testimony, as explanation and excuse for Gosdin's false statements during the depositions taken by Aetna in its investigation of the fire. It is difficult to understand how Gosdin can now object to the admission of evidence that he himself first put before the jury.[6]

Even if Gosdin had not first volunteered the information to the jury, evidence of the burglary charges would still be admissible in this case. Aetna presented the burglary charges and the fact that, just prior to the fire, Gosdin had been released on bond on the charges as evidence of Gosdin's motive for the fire. As part of Aetna's evidence indicating that Gosdin was in poor financial condition, Aetna suggested that Gosdin would need a substantial amount of money to mount a defense to the burglary charges. In this case, the evidence, if presented in a non-inflammatory manner, clearly falls within a specific exception to Fed.R.Evid. 404(b)'s prohibition on the use of evidence of other crimes.[7]

#### 2. *Pimping, Pandering, and Drug Charges*

■ The evidence of pimping, pandering, and drug charges do not have either of the saving factors found with the burglary charges. Unlike the burglary charges, Gosdin did not first present the other charges to the jury. And Aetna has not suggested that the non-burglary charges have any bearing on the motive, opportunity, or other factors relating to Aetna's claim that Gosdin committed an act of arson.[8]

Aetna's only argument is that the other charges were among the factors it considered in denying Gosdin's claim. Aetna presented those charges as evidence of its

---

**6.** On the other hand, it is not clear why the trial court felt it necessary to admit the certified copies of the burglary charges, given that neither side disputed the existence of those charges. The specific information contained in the copies of the charges seems unlikely to be relevant to any issues before the jury. If in a new trial of this case this question recurs, it will be for the trial judge to determine what additional relevant evidence certified copies of the charges supply, and whether that additional evidence outweighs any possible prejudice from having the documents before the jury. *See Powell v. Merrimack Mut. Fire Ins. Co.,* 667 F.2d 26, 29–30 (11th Cir.1982) (in civil arson case, upholding admission of evidence of lawsuit against policyholder where insurance company claimed that policyholder was in bad financial condition and policyholder did not admit existence of lawsuit).

**7.** Fed.R.Evid. 404(b) states in pertinent part:
    **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**8.** In a confusing sentence in their supplemental brief, Aetna may have intended to argue for the first time that the prior pimping, pandering, and drug charges might be admissible evidence relating to a motive for the fire. Appellee's Sup-

good faith in denying the claim. While Aetna may have considered the charges in its internal deliberations, this fact without some more direct connection to the fire is too inflammatory to present safely to the jury. *Cf. Brown v. Miller,* 631 F.2d 408, 412 (5th Cir. Unit A 1980) (in civil rights action, evidence of unrelated prior illegal acts of defendant highly prejudicial). We might reach a different result if the prior charges were more minor and less socially offensive than pimping, pandering, and drug distribution.[9] But these charges, none of which apparently led to convictions, may well have had an unfair influence on the deliberations of the jury.[10] Because of the nature of the charges and their lack of relevance to the facts at issue in the case, it was error to admit the testimony about them.[11]

## C. *Harmless Error*

■ Our analysis cannot stop at this point.[12] We must assess whether, in light of the strength of the other evidence, the admission of the prejudicial evidence was harmless. As we noted at the outset of this opinion, this is a typical civil arson case, in which the insurance company mounted a case of circumstantial evidence

suggesting that Gosdin had in fact set the fire. If this evidence is so strong to allow no other finding by the jury, then the evidentiary error can be deemed to be harmless.

Prior to assessing the evidence, we must consider the standard of harmless error to be applied in a civil case. In *Conway v. Chemical Leaman Tank Lines,* 525 F.2d 927, 929 n. 3 (5th Cir.1976), binding on this court, the Fifth Circuit ruled that in civil cases courts should apply the same standard as announced in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), a criminal case. In that case, the Supreme Court wrote that if a court

is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.

---

plemental Brief at 3. Aetna does not, however, elaborate or explain how the non-burglary charges suggest a motive.

9. It is difficult to distinguish this case from the civil arson case described in *Northern Assurance Company of America v. Roll,* 176 Ga.App. 893, 338 S.E.2d 870 (1985), in which the trial court excluded evidence of the sexual preference of the insured. In their supplemental brief, Aetna does successfully distinguish the burglary charges from the facts in the *Roll* case. Appellee's Supplemental Brief at 2. The other charges, however, cannot be so easily distinguished. In fact, to many jurors, evidence of criminal charges of pimping, pandering, and drug distribution may be more offensive and inflammatory than the evidence of homosexuality excluded in the *Roll* case.

10. As noted above, the possible prejudice was compounded by the fact that it was presented in Aetna's case in chief. It is possible that in another case, with criminal charges more relevant to the facts at issue, testimony about such charges might be appropriate if clearly presented as rebuttal to the bad faith claim, after the insured had presented evidence suggesting bad

faith. In this case, however, the jury might have been confused by the presentation, and might have factored the criminal charges into its determination of the factual questions surrounding the fire.

11. This court has at times refused to admit evidence of past wrongdoing even if the past acts are very similar to the act at issue. *See Garcia v. Aetna Casualty & Surety Co.,* 657 F.2d 652, 655 (5th Cir. Unit B Aug. 1981) (in civil arson case, error to admit evidence that insured owned other buildings destroyed by fire, where no concrete evidence linked insured to prior fires); *cf. Smith v. State Farm Fire & Casualty Co.,* 633 F.2d 401 (5th Cir.1980) (failure to admit such evidence not error).

12. "'The admissibility of evidence is within the sound discretion of the district court ... and even if error is found it must of course rise above the threshold of harmless error.'" *Perry v. State Farm Fire & Casualty Co.,* 734 F.2d 1441, 1446 (11th Cir.1984) (quoting *Wallace v. Ener,* 521 F.2d 215, 222 (5th Cir.1975)), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985).

*Id.* at 764–65, 66 S.Ct. at 1248 (footnote omitted) (citation omitted).[13]

In applying this standard to the case before this court, there are a variety of factors to be considered, including the number of errors, the closeness of the factual disputes, the prejudicial effect of the evidence, the instructions given, and whether counsel intentionally elicited the evidence and focused on it during the trial. 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 103[06], at 103–61 to 103–62.

In this case, as we have made clear, the evidence was potentially quite prejudicial. As in any case dependent solely on circumstantial evidence, the factual issues were close, with no direct evidence connecting Gosdin to the arson. The court gave no instructions to ignore the prejudicial evidence. And finally, Aetna's counsel clearly intended to have this evidence come before the jury, and twice asked Aetna's key witness about the pimping and pandering charges. This, when taken in conjunction with at least five references to the burglary charges, was likely to emphasize all of the criminal charges to the jury. Because of all of this, we cannot say with fair assurance that the judgment was not substantially swayed by the impermissible evidence.

### III. OTHER CLAIMS

■ In light of our disposition of Gosdin's first claim, we would normally not reach his other claims. But, because the question may arise again in a retrial of this case, we will briefly discuss one other claim.

Gosdin complains that the trial court granted Aetna's motion *in limine* to exclude any evidence relating to the fact that Gosdin was never charged or convicted of

arson in relation to the fire at issue. Aetna argued that the different standards of proof between a criminal prosecutorial decision and a civil case might mislead the jury. We agree. As Gosdin's counsel conceded in oral argument, the case of *Williams v. Cambridge Mutual Fire Insurance Co.,* 230 F.2d 293 (5th Cir.1956), controls this case. In a very similar fact situation, the Fifth Circuit held the desired evidence to be inadmissible. It should be similarly inadmissible here.

### IV. CONCLUSION

For the reasons stated in Section II, the judgment of the district court is vacated, and this case is remanded for a new trial.

**VACATED and REMANDED.**

---

**13.** *See also O'Rear v. Fruehauf Corp.,* 554 F.2d 1304, 1308 n. 3 (5th Cir.1977) (applying *Kotteakos* to a civil case). Recently, two other circuits have given extensive consideration to the question of whether the civil and criminal harmless error standards should be the same. The two courts reached different conclusions, but both announced simpler formulations of a standard. In *McQueeney v. Wilmington Trust Co.,* 779 F.2d 916 (3d Cir.1985), the Third Circuit decided the standards should be the same, and held that a reviewing court should affirm if it believes "that

it is *highly probable* that the error did not contribute to the judgment." *Id.* at 924 (emphasis in original). The Ninth Circuit, on the other hand, created a different standard for civil cases, ruling that an appellate court "need only find that the jury's verdict is more probably than not untainted by the error." *Haddad v. Lockheed California Corp.,* 720 F.2d 1454 (9th Cir.1983). Applying either standard, we cannot say with confidence that the prejudicial evidence admitted here did not taint the jury's verdict.