**FIGA, formerly The American Druggists' Insurance Company, and Ranger Insurance Company, Plaintiffs–Appellants,**

v.

**R.V.M.P. CORPORATION, d/b/a B.J.'s Seaside Restaurant, Defendant–Appellee.**

No. 88–5123.

United States Court of Appeals, Eleventh Circuit.

June 13, 1989.

---

John J. Pappas, Frances Maxwell Morris, Butler and Burnette, Tampa, Fla., for plaintiffs-appellants.

Clark Jordan–Holmes, Lyle & Skipper, P.A., Tampa, Fla., for amicus curiae: Fla. Defense Lawyers Assoc.

Ronald Fitzgerald, Fleming, O'Bryan & Fleming, Ft. Lauderdale, Fla., David J. Chesnut, P.A., Stuart, Fla., for defendant-appellee.

Before JOHNSON and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Plaintiffs in a declaratory judgment action appeal from the denial by the district court of their motion for a mistrial and a new trial following a judgment against them for insurance liability.

## I. STATEMENT OF THE CASE

Plaintiffs, the American Druggists' Insurance Company, whose liabilities have been assumed by the Florida Insurance Guarantee Association ("FIGA"), and Ranger Insurance Company filed a declaratory judgment action against their insured, RVMP Corporation, d/b/a B.J.'s Seaside Restaurant, seeking a declaration of non-liability and alleging arson by the insured and breach of the insurance contract. Defendant-appellee counterclaimed for insurance proceeds and for pre-judgment interest.

After a jury trial, the jury found that the insured did not commit arson. The court entered judgment for defendant in the amount of $418,525 plus pre-judgment interest of $255,106. Appellants moved for a mistrial and new trial, arguing that the district court incorrectly admitted evidence of the decision of the fire marshal not to present the case to a state prosecutor or

grand jury. The insurers had moved in limine to exclude any such evidence and objected to the admission of that evidence at trial. The court denied the motion.

## II. STATEMENT OF FACTS

B.J.'s Seaside Restaurant opened in 1980. Initially unprofitable, it began to turn a profit by 1982, according to the insured. Appellants presented evidence, however, that appellee's business was in a precarious financial situation in May 1982. A fire started at the restaurant on May 2, 1982 at about 2:00 a.m. The bar had just closed, the customers were leaving, and the assistant manager and one of the principals had just restocked the bar. Members of the band which had been playing, along with several witnesses and customers, were still present inside the establishment or in the parking lot. Smoke was detected coming from the ceiling of the banquet room adjacent to the bar area. After considerable delay on the part of the fire department, the fire came under control at about 3:30 a.m. Although all of those present the evening of the fire testified that they observed the fire to have started in the ceiling, the State Fire Marshal, Albert Schiller, who conducted an investigation the following day, concluded that the evidence indicated that the point of origin was at the floor level. Schiller, testifying as an expert, gave his opinion that an accelerant had been used to start the fire intentionally.

## III. ISSUES

A. Whether a statement to the jury, in a civil fire insurance case, that the fire marshal, if present, would have testified that there was insufficient evidence to charge the insured with arson constitutes grounds for a mistrial or a new trial.

B. Whether FIGA can be liable for prejudgment interest as a part of damages on a covered claim.

## IV. DISCUSSION

### A. *Non-prosecution Evidence*

■ The law enforcement investigator for the State Fire Marshal's office, Schiller, who had conducted an investigation of the fire scene, testified for the insurers. He stated that, in his opinion, the fire had been deliberately set. On cross-examination of the witness, the insured's counsel posed the following question:

> Sir, at the time you closed the file and concluded the investigation, was it not the consensus of the investigators involved in this case that you had not collected sufficient information to take the case to the State Attorney's office?

Before Schiller could answer, the insurers' counsel objected. After a lengthy discussion (out of the presence of the jury) of the ramifications of admitting or excluding the answer to that question, the court decided not to recall the witness. Instead, the court instructed the jury as follows:

> Gentlemen of the jury, let me advise you as follows. Yesterday afternoon we had Fire Marshal Schiller who was testifying when we recessed ... You are advised first of all to disregard the question and answer if one was given the last question and answer of the Fire Marshal. You are advised as follows. You are instructed as follows and you may accept this as the Court's statement on the issue.
>
> Fire Marshal Schiller did not present the results of his investigation to the State Attorney or a grand jury for criminal prosecution because he did not believe that he had sufficient evidence under the standard of law beyond and to the exclusion of all reasonable doubt. That is the standard in a criminal case.
>
> He felt he did not have sufficient evidence under that standard of the identity of the person who set the fire which his investigation determined in his opinion was deliberately set. He has testified in his opinion that the fire was deliberately set.
>
> But if he were to continue testifying, he would testify that that is the reason he did not take the matter for criminal prosecution to the state attorney.
>
> Alright, based on that we are not going to call him back.

Appellants contend that the evidence of non-prosecution, proffered purportedly to rebut Schiller's opinion that the fire had been intentionally set, does not directly rebut his testimony. Schiller's opinion dealt only with how the fire began, not who started it. Appellants rely on several federal appellate decisions which hold that evidence of non-prosecution of criminal arson is inadmissible in an action for civil arson. In *Aetna Casualty & Surety Co. v. Gosdin*, 803 F.2d 1153 (11th Cir.1986), this Court stated:

In light of our disposition of Gosdin's first claim, we would normally not reach his other claims. But, because the question may arise again in a retrial of this case, we will briefly discuss one other claim.

Gosdin complains that the trial court granted Aetna's motion *in limine* to exclude *any* evidence *relating* to the fact that Gosdin was never *charged* or convicted of arson in relation to the fire at issue. Aetna argues that the different standards of proof between a criminal prosecutorial decision and a civil case might mislead the jury. We agree. As Gosdin's counsel conceded in oral argument, the case of *Williams v. Cambridge Mutual Fire Ins. Co.*, 230 F.2d 293 (5th Cir.1956), controls this case. In a very similar fact situation, the Fifth Circuit held the desired evidence to be inadmissible. It should be similarly inadmissible here.

803 F.2d at 1160 (emphasis added).

The *Williams* Court held that evidence of the reversal of the insured's criminal conviction of arson was not admissible in a civil action brought by the insured against the insurance company, because it failed conclusively to determine the issue in the civil case and was *irrelevant* to the question. 230 F.2d at 294.

In the later case, *American Home Assurance Co. v. Sunshine Supermarket*, 753 F.2d 321 (3d Cir.1985), the Court of Appeals for the Third Circuit held that the trial court had committed reversible error in admitting evidence of non-prosecution of the insured. The opinion in *American*

*Home Assurance Co.* cited with approval the Fifth Circuit's *Williams* case.

The holding by this Court in *Gosdin*, that the trial court in that case did not err in excluding *"any* evidence*"* *relating* to the fact that Gosdin was never charged or convicted of arson in relation to the fire at issue, clearly includes evidence offered even in rebuttal. The trial court, in the instant case, distinguished between the right of the insured to introduce evidence of non-prosecution in rebuttal from the right of the insured to introduce such evidence on direct. This, however, conflicts with our decision in *Gosdin, supra.* In fact, it is difficult to understand how such evidence would ever be relevant to the issue of arson in a civil case. The standards of proof are different. Here, while the trial court pointed out to the jury the standard of proof in a criminal case, it did not undertake to describe the standard of proof in the case at issue: merely a preponderance of the evidence. The difference in standards of proof alone was the basis of our decision in *Gosdin*, because "[it] might mislead the jury." 803 F.2d at 1160.

The trial court recognized the significance of this difference in its published opinion in this case: "a lack of sufficient evidence for a criminal case *has no bearing* on the issue of whether the defendant committed arson under the lesser evidentiary standard in civil cases." *F.I.G.A. and Ranger Insurance Company v. RVMP Corp. d/b/a B.J.'s Seaside Restaurant*, 675 F.Supp. 1327, 1329 (S.D.Fla.1988) (emphasis supplied). If the evidence "has no bearing on the issue ... in civil cases," it was obviously irrelevant.

Moreover, as pointed out by the appellant, the court's statement as to what the fire marshal would have testified to if called back to the stand, was not in rebuttal to anything that he had stated on direct. His testimony dealt only with the issue of whether the fire had been set intentionally. It made no mention of any individual who might have been responsible for the alleged arson. Therefore, the court's statement that, if recalled, Schiller would have testified that he did not present the issue to the

state prosecutor or a grand jury because he had insufficient evidence *of the identity of the person* who set the fire to establish guilt beyond a reasonable doubt would not have rebutted Schiller's testimony that, in his opinion, the fire had been intentionally set.

The trial court was clearly troubled by the issue presented by the non-prosecution proffer. In order best to solve it, the court decided to make its own statement as to what the fire marshal would have testified to. In doing so, the court introduced, for the first time, the question of "who" caused the fire. This was in the court's statement that Schiller "felt he did not have sufficient evidence under [the applicable] standard *of the identity of the person who set the fire* which his investigation determined in his opinion was deliberately set." By deciding not to recall the witness, the court denied the insurers the right on redirect to ask Schiller whether he had sufficient evidence under the standard of preponderance of the evidence required in a civil case. It also prevented appellant from asking Schiller if he had formed an opinion on who had started the fire—an issue raised for the first time by the court's statement. The court, several times, during the long discussion with counsel, made it clear that if it made the statement, as it did, either party was preserving the issue for appeal.

We conclude, therefore, that the admission of this statement by the trial court as to what the fire marshal would have said, if recalled, was error. Since there was sufficient evidence on the record from which the jury could have found arson had occurred, the error could have affected the outcome of the case. It, therefore, requires a reversal of the judgment.

## B. *Pre-judgment Interest*

■ Appellants contend that FIGA cannot be held liable for pre-judgment interest, under Florida Statutes § 631.57, which provides that "[i]n no event shall [FIGA] be liable for any penalties or interest." Fla. Stat. § 631.57(1)(b).

Appellee argues that the exclusion in the statute prohibits assessments of interest imposed only as a penalty and that the interest at issue here is part of an award of damages, not a penalty.

Appellee relies on *Argonaut Insurance Co. v. May Plumbing Co.,* 474 So.2d 212 (Fla.1985), in which the Florida Supreme Court held that when damages are liquidated and fixed as of a prior date, interest is merely another element of pecuniary damages and should follow from that date. *Argonaut* did not involve an action brought by or against FIGA, however, which as the state-created insurer is subject to special rules specifically formulated by the Florida legislature.

The Supreme Court of Florida has not spoken on the precise issue presented in this case. The decisions of the intermediate appellate courts to which the parties refer in their briefs, however, do apply to FIGA and consistently refuse to award prejudgment interest as against FIGA. In *F.I.G.A. v. Gustinger,* 390 So.2d 420 (Fla. 3d Dist.Ct.App.1980), the court struck the allowance of interest on workmen's compensation fee awards, which were for a covered claim, for the period prior to the entry of final judgment. *Id.* at 421. The court stated: "FIGA's non-liability for interest applies ... only with respect to 'covered claims.' FIGA remains responsible for the payment of lawful interest on the final judgment itself from the date of entry." *Id.* at 421 n. 2. In *Carballo v. Warren Mfg. Co.,* 407 So.2d 603 (Fla. 1st Dist.Ct.App.1981), *review denied,* 415 So.2d 1362 (Fla.1982), the court held that "FIGA may not be held responsible for interest on compensation benefits payable prior to the entry of final judgment, [but] FIGA must still pay lawful interest on amounts not paid after final judgment was entered." *Id.* at 607.

Appellee contends that these cases involve claims for workmen's compensation and do not apply in the context of fire insurance claims. The compensation sought in each of those cases was for a "covered claim," Fla.Stat. § 631.54(3), which FIGA is obligated to pay under

§ 631.57(1)(a). There is no reason to distinguish between those damage awards and an award for a covered claim in this case. Moreover, at least one case not involving workmen's compensation, though not specifically prohibiting an award of pre-judgment interest, granted only post-judgment interest. *F.I.G.A. v. Giordano*, 485 So.2d 453 (Fla. 3d Dist.Ct.App.1986). The *Giordano* court thus implicitly denied a pre-judgment interest award as against FIGA. In addition, one recent decision, also not involving workmen's compensation, specifically prohibited an award of pre-judgment interest upon claims against FIGA for unearned premiums, which are "covered claims" for which FIGA is obligated, Fla. Stat. § 631.54(3). *NCNB National Bank of Florida v. F.I.G.A.*, 541 So.2d 728 (Fla. 1st Dist.Ct.App.1989). The court permitted an award of post-judgment interest but stated that Fla.Stat. § 631.57(1)(b) precludes a pre-judgment interest award against FIGA.

The statute in precise terms prohibits the payment of interest by FIGA. Appellee, however, argues that, since appellants concede that FIGA is liable for post-judgment interest, the statute does not mean precisely what it says and can thus be read to permit payment of pre-judgment interest.

We do not agree. There is a significant difference between pre- and post-judgment interest. The FIGA statute § 631.57(1)(b) deals with what is to be recoverable against FIGA. Once that amount is determined (not including interest) a judgment is entered by the court. Then, by virtue of a different statute, 28 U.S.C. § 1961, that judgment bears interest until paid (post-judgment interest). Post-judgment interest can hardly be considered part of an award for compensation on a claim. However, a successful claimant is theoretically entitled to receive the compensation on the date of entry of the judgment; in practice, this is not feasible, and post-judgment interest serves to reimburse the claimant for not having received the money in hand on that day. This is effectuated by the federal statute providing interest on all federal court judgments. 28 U.S.C. § 1961. This is to be distinguished from pre-judgment interest, which forms part of the actual amount of a judgment on a claim.

Therefore, should FIGA be found liable upon retrial of the case, the amount of FIGA's obligation to the insured shall not include an award of pre-judgment interest, for which FIGA cannot be liable. The insured is, however, entitled to post-judgment interest on any final judgment entered in the insured's favor.

### C. New Trial or Partial New Trial?

Relying on Rule 59(a), Federal Rules of Civil Procedure,[1] appellee contends that if this Court should grant a new trial to appellants, the trial so ordered should be restricted to a trial on the issue of liability and the amounts set by the jury in the first trial as to the amount of damages should not be retried.

■ Appellant is correct in stating that the scope of a new trial may be limited to a single issue when the issue as to which a new trial is required is separate from all other issues and the error requiring a new trial does not affect the determination of any other issue. *See Indamer Corp. v. C.H. Crandon*, 217 F.2d 391 (5th Cir.1954).

■ This, of course, then leaves the question whether, in this case, the grant of a new trial on the issue involving the claim by FIGA that the fire was deliberately set by, or at the instance of, one of the responsible parties controlling the insured is an issue that is entirely separate from the issue of the amount of damages recoverable.

The Supreme Court has spoken on this subject in *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931):

> new trials have heretofore been granted in actions at law in the courts of the United States....

---

1. This Rule provides as follows:
   A new trial may be granted to all or any of the parties and on all or part of the issues—
   (1) In an action in which there has been a trial by jury, for any of the reasons for which

Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.

283 U.S. at 500, 51 S.Ct. at 515.

Here, FIGA contested the amount of damages, both in its pleadings and by proof it offered during the trial. A substantial amount of the damages recovered represented the loss of earnings allegedly suffered by the insured. This evidence related to the solvency or insolvency of the insured, its profit-making potential and its entire financial situation. These factors were related to the alleged intent of the insured for intentionally causing the fire, and they related to the amount of damages in the estimate the jury was required to make of lost earnings. Moreover, FIGA contended that the insured violated the terms of the policy by falsely exaggerating the value of the property lost in the fire.

We agree, therefore, with the Court of Appeals for the Third Circuit when it stated:

> In addition, we believe that facts underlying [the insured's] claim for losses under the policy and [the insurer's] defense of fraudulent exaggeration of the proof of loss are so interwoven with those of the arson defense that justice demands a retrial of these issues together.... [Citing *Gasoline Products Company, supra.*] ... [The insured's] financial history, profitability, and solvency were relevant to this claim and these defenses.

*American Home Assurance*, 753 F.2d at 329.

We conclude, therefore, that the new trial should be on all issues presented at the original trial.

### D. *Outstanding Motions*

#### (1) *Attorney's Fees*

Appellee moves for costs and attorney's fees on appeal pursuant to Fla.Stat. § 627.428 and the Florida Rules of Appellate Procedure. It appearing that appellee has not prevailed on this appeal, the motion for attorney's fees is, therefore, denied.

#### (2) *Amicus Brief*

Appellee's motion to strike the Florida Defense Lawyers Association's amicus brief is denied.

### CONCLUSION

The judgment of the trial court denying the motion for new trial is reversed and the case is remanded to the district court. Upon such new trial, the appellee, if successful in establishing liability, will not be entitled to pre-judgment interest.

REVERSED and REMANDED.