**AD–VANTAGE TELEPHONE DIRECTORY CONSULTANTS, INC., Plaintiff–Appellant, Cross–Appellee,**

v.

**GTE DIRECTORIES CORPORATION, Defendant–Appellee, Cross–Appellant.**

No. 93–2038.

United States Court of Appeals, Eleventh Circuit.

Nov. 14, 1994.

---

John R. Ferguson, Thomas W. Szromba, Swidler & Berlin, Washington, DC, Jawdet I. Rubaii, Clearwater, FL, for appellant.

William J. Blechman, James J. Kenny, Miami, FL, for appellee.

Before TJOFLAT, Chief Judge, COX, Circuit Judge, and YOUNG *, Senior District Judge.

COX, Circuit Judge:

Ad–Vantage Telephone Directory Consultants, Inc. (Ad–Vantage) appeals following a jury verdict of no damages after a trial only on the issue of damages. Finding that the trial court erred in failing to grant a new trial after permitting an improper cross-examination of Ad–Vantage's expert witness, under Federal Rule of Evidence 608(b), we reverse and remand.

I. Background

This is the third time this case has come before this court. In 1982, Ad–Vantage was in the business of selling yellow pages advertising space on behalf of yellow pages publishers. Based on a series of actions ex-plained more fully in our earlier opinions, Ad–Vantage sued GTE Directories Corporation (GTEDC) for violation of federal and Florida antitrust law and for intentional interference with advantageous business relationships. *See Ad–Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1338–40 (11th Cir.1987) (*Ad–Vantage I*). Before the first trial, the parties consented to trial before a magistrate judge. The first jury returned verdicts in Ad–Vantage's favor on the state-law antitrust and interference claims.

In the first appeal, this court reversed the judgment in Ad–Vantage's favor on the state antitrust claim, but affirmed the jury's finding of liability on the interference claim. *Id.* at 1348, 1350. A remand followed for a trial on the issue of compensatory damages for the interference claim. *Id.* at 1353. At the second trial, the magistrate judge directed a verdict against Ad–Vantage based on his interpretation of this court's mandate in *Ad–Vantage I*. *Ad–Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp.*, 943 F.2d 1511, 1517 (11th Cir.1991) (*Ad–Vantage II*). On appeal, we reversed and remanded for yet another trial, again solely on the issue of damages. *Id.* at 1519.

At the third trial, Ad–Vantage called Leonard Anton, a CPA and lawyer, for expert testimony about Ad–Vantage's lost profits. On cross-examination, GTEDC's counsel questioned Anton extensively on his methods and calculations. GTEDC then moved away from Anton's lost profit estimates and into Anton's past. The personal questioning primarily concerned three events.

GTEDC first sought to inquire into Anton's bankruptcy several years before trial. The magistrate judge sustained Ad–Vantage's objection to explicit mention of the bankruptcy. GTEDC's counsel nonetheless delved into loans Anton had taken from his accounting clients that he did not repay in full because of his bankruptcy. GTEDC's counsel went down Anton's bankruptcy schedule, asking Anton about each client—by

---

* Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

name—from whom Anton had borrowed money. The mention of each client was followed by the question whether Anton had repaid the debt. Ad–Vantage's repeated objections were overruled.

GTEDC's counsel then began inquiring into disciplinary proceedings of the Florida Bar Association and the American and Florida Institutes of Certified Public Accountants against Anton around 1990 and 1991. GTEDC revealed that all three organizations had investigated Anton for forging an endorsement on a client's check. No sanctions resulted, but Anton resigned from the Bar with leave to reapply. The Institutes of CPAs found no probable cause. On recross, the magistrate judge allowed GTEDC's counsel, over objection, to quote the grievance letter sent to the Florida Bar Association by one of Anton's accounting clients.

Finally, GTEDC's counsel questioned Anton about his censure by the Florida Board of Accountancy in 1969. GTEDC brought out that the offense was overreliance on a partner's work. Ad–Vantage moved twice for a mistrial during and immediately after the questioning about Anton's personal affairs.

GTEDC went on to present an eight-day case. During its case, GTEDC presented testimony showing that some of the forty-six accounts Ad–Vantage claimed to have lost because of GTEDC's tortious conduct were in fact lost for other reasons, such as more attractive offers from other yellow pages dealers. Some of this testimony was excluded by the trial judge as beyond the scope of the damages-only trial.

The jury returned a verdict awarding Ad–Vantage no damages. Ad–Vantage then moved for judgment as a matter of law or, alternatively, a new trial. The trial court denied both motions.

## II. Issues on Appeal

On this appeal, Ad–Vantage challenges the magistrate judge's admission of evidence showing that some of the accounts Ad–Van-

tage claims were lost because of GTEDC's tortious conduct were in fact lost for other reasons. Ad–Vantage also contends that the trial court erroneously denied it a new trial in the wake of the improper and highly prejudicial cross-examination of Ad–Vantage's expert witness.[1]

## III. Standard of Review

■ We review rulings on the admission of evidence and motions for new trial for abuse of discretion. *Aetna Casualty & Surety Co. v. Gosdin,* 803 F.2d 1153, 1159 (11th Cir. 1986); *see Redd v. City of Phenix City,* 934 F.2d 1211, 1213 (11th Cir.1991).

## IV. Discussion

### A. Evidence Showing Reasons for Account Loss

■ Ad–Vantage contends that the trial court erroneously admitted GTEDC's evidence that some of the accounts Ad–Vantage claimed as lost because of GTEDC's conduct were in fact lost for other reasons, or not lost at all. Ad–Vantage argues that this "causation" issue was decided by the liability verdict in the first trial, and that therefore this evidence is irrelevant under our mandates in *Ad–Vantage I* and *Ad–Vantage II.* We disagree.

As Ad–Vantage had to concede in oral argument, it was not entitled to damages it did not suffer. *See National Airlines, Inc. v. Edwards,* 336 So.2d 545, 547 (Fla.1976). To that extent, what Ad–Vantage labels evidence of causation is in fact evidence necessary to measure damages. Ad–Vantage does not contend that it sought to limit the second or third trials to any issue narrower than damages. GTEDC was therefore properly permitted to present this evidence leading to an accurate measure of Ad–Vantage's damages.

### B. Cross–Examination of Anton

Ad–Vantage contends that the magistrate judge abused his discretion in refusing Ad–

---

1. We reject as meritless Ad–Vantage's request that we enter judgment in its favor based on the first jury verdict. Because we remand the case, we need not address GTEDC's cross-appeal, which challenges the trial court's failure to tax costs to Ad–Vantage. *See Farmer v. Arabian Am. Oil Co.,* 379 U.S. 227, 233, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964).

Vantage a new trial after allowing GTEDC to question Anton on his bankruptcy, the 1990 accusation of forgery, and the sanction of the Florida Board of Accountancy in 1969. We agree.[2]

We begin our analysis of the trial court's ruling on Ad–Vantage's new trial motion by observing that the trial court erred in permitting GTEDC to cross-examine Anton on these matters. Federal Rule of Evidence 608(b) permits inquiry, at the court's discretion, into specific instances of a witness's conduct that are "probative of truthfulness or untruthfulness." Fed.R.Evid. 608(b). Rule 403 circumscribes the court's discretion by requiring the court to weigh the probative value of the evidence against the danger of unfair prejudice from it. *See* Fed.R.Evid. 403.

■ Acts probative of untruthfulness under Rule 608(b) include such acts as forgery, perjury, and fraud. 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 608[5] at 608–45 to 608–46 (1994). Unlike these acts, seeking discharge in bankruptcy does not show a disregard for truth that would cast doubt on a witness's veracity.[3] *See United States v. Lanza*, 790 F.2d 1015, 1020 (2d Cir.), *cert. denied sub nom. Lyubarsky v. U.S.*, 479 U.S. 861, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986). Anton's borrowing from his clients, while ethically questionable, is likewise irrelevant to his truthfulness as an expert. To infer untruthfulness from any unethical act "paves the way to the exception which will swallow the Rule." 3 Weinstein & Berger, *supra*, ¶ 608[05] at 608–49.

■ The magistrate judge also erroneously admitted testimony concerning the 1990 accusation of forgery and the 1969 sanction for overreliance on his partner's work. To the extent the evidence was probative at all, it was relevant either to Anton's truthfulness or professional competency. *See United States v. Jackson*, 882 F.2d 1444, 1448 (9th Cir.1989) (disbarment because of misappropriation of client funds probative of untruthfulness); *Alpha Display Paging, Inc. v. Motorola Communications & Elecs., Inc.*, 867 F.2d 1168, 1171 (8th Cir.1989) (compliance with ethical standards probative of accuracy). Given the absence of any sanctions from the 1990 accusation and the temporal remoteness of the 1969 sanction, we doubt the evidence's relevance. Nonetheless, the evidence—even if relevant—was certainly too weakly probative to survive Rule 403's balancing test.

■ The outcome of the grievance proceedings against Anton by the Florida Bar and the American and Florida Institutes of Certified Public Accountants negates the 1990 accusation's value as evidence probative of untruthfulness. After investigation, the Bar did find probable cause to believe that Anton had violated ethical rules. However, the charges were dismissed and Anton was permitted to resign with leave to reapply. Unlike the Bar, the Institutes of CPAs did not find probable cause. Neither of the investigations resulted in any sanction. In these circumstances, when the allegations of wrongdoing were grave but no sanctions resulted, the danger was great that the jury would infer more from the investigation than was fairly inferable. The magistrate judge should have excluded this line of questioning under Rule 403.

■ The risk of unfair prejudice from the jury's knowledge of Anton's sanction for overreliance on his partner's work in 1969 also significantly outweighed its probative value. Temporally remote acts are only weakly probative of the witness's current credibility. *See United States v. Cox*, 536 F.2d 65, 72 (5th Cir.1976) (probative value of evidence of false statements to immigration

---

2. We note that some of the testimony permitted, such as the reading of the 1990 accusation into the record, was clearly hearsay inadmissible under any exception. *See* Fed.R.Evid. 801(c). However, Ad–Vantage's counsel did not raise hearsay as a ground of objection either at trial or on this appeal. The evidence is in any event inadmissible under Rule 403, as we discuss below.

3. Fraud in bankruptcy proceedings, of course, has been held to be probative of untruthfulness. *See United States v. Cusmano*, 729 F.2d 380, 383 (6th Cir.), *cert. denied*, 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984).

officials sixteen years before trial outweighed by danger of unfair prejudice). Here, Anton was sanctioned for improper reliance on his partner's work twenty-three years before trial. Although the old sanction was possibly probative of Anton's current professional competency, the risk that the jury would place undue emphasis on it was great. The magistrate judge therefore erroneously permitted this testimony as well.

■ After the jury had heard this inadmissible evidence, the magistrate judge should have granted a new trial if GTEDC's improper cross-examination of Anton affected Ad–Vantage's "substantial rights." Fed. R.Civ.P. 61; *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1308 (5th Cir.1977). " '[I]f one cannot say, with fair assurance, . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.' " *Aetna Casualty & Surety Co.*, 803 F.2d at 1159 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). We hold that the magistrate judge abused his discretion in failing to grant a new trial after erroneously permitting this improper and highly prejudicial cross-examination.

■ Among the factors to consider in determining whether Ad–Vantage's substantial rights were affected are the number of errors, the closeness of the factual disputes, the prejudicial effect of the evidence, the instructions given, and whether counsel intentionally elicited the evidence and focused on it during the trial. *Aetna Casualty & Surety Co.*, 803 F.2d at 1160. In this case, although the errors were few, the disputed facts were close, the evidence was highly prejudicial, no correcting instructions were given, and the inadmissible evidence was not only intentionally elicited but also emphasized in closing argument. We cannot say with fair assurance that the verdict was not substantially swayed. *See id.* at 1159.

First of all, the facts were close. Ad–Vantage's evidence showed Ad–Vantage to have been profitable before GTEDC's tor-

tious conduct in 1982. Ad–Vantage presented a detailed damage study. The study was supported by extensive expert testimony from Anton. Anton's methodology, as it was explained to the jury, was first to calculate the 1982 gross profit on each of the forty-six accounts Ad–Vantage claimed it lost. Anton then projected the 1982 gross profit forward with revenue growth percentages based on industry sources and expense growth percentages based on the consumer price index. When possible, Anton adjusted the total gross profit by taking into account the actual history of Ad–Vantage's lost customers, for instance stopping projections when customers went out of business or became customers of Ad–Vantage's successor business, National Yellow Pages Directory Services (National).

In its cross of Anton and in its eight-day defense case, GTEDC presented extensive testimony and evidence attacking Ad–Vantage's damage study. For example, GTEDC presented expert testimony that Ad–Vantage was not profitable in 1982. It also presented testimony comparing Ad–Vantage's projected growth in revenue and expense to National's actual experience of revenue and expense growth, showing that Ad–Vantage's damage study both underestimated expenses and overestimated revenues. GTEDC's evidence also showed that the business of selling yellow pages advertising space is very unstable.

The considerable conflicting evidence gave the jury a wide range of possible verdicts. In the first appeal we found that a similar damage study would support a $1.5 million jury verdict. *Ad–Vantage I*, 849 F.2d at 1350.[4] There was also in this trial evidence to support a verdict of no damages. Given the jury's challenging task, it is difficult to say that the jury was not substantially swayed by the improper cross-examination of Anton.

Second, the admission of evidence of Anton's personal history was highly prejudicial and went uncorrected. Anton's testimony was central to Ad–Vantage's proof of its damages. GTEDC's cross-examination of Anton discredited his testimony. Based on

---

**4.** A remand was required because Ad–Vantage failed, as required by Florida law, to present evidence of an appropriate deduction from its

lost profits for compensation to Blumberg, Ad–Vantage's manager and sole shareholder. *Ad–Vantage I*, 849 F.2d at 1353.

this improper impeachment, the jury could easily have disregarded Ad–Vantage's damage study altogether.

Finally, GTEDC's counsel intentionally elicited this evidence. GTEDC's theory of the case was that Ad–Vantage's sole shareholder, Blumberg, was perpetrating a fraud on GTEDC, the court, and the jury through his fabricated testimony and damage studies. The cross-examination of Anton about Anton's personal history was an important brick in that wall, and GTEDC's counsel accordingly emphasized it in closing argument:

> The evidence that we presented [as to Anton's damage study] went squarely, squarely to the merits of his analysis. But as well, because these things are things that can come only from experts, we had to ask, how is it, why is it, how could—how could a qualified expert say something like this? How could a damage claim that has been described by Dean Lanzillotti as ludicrous, how could it be put forward to a court, in federal court and a jury? The answer to that respectfully lies in the background of Mr. Anton.
>
> Truly remarkable series of events. Mr. Anton, as you'll recall, an unpleasant fact that we don't like to face but must face because it's here. Because they brought it here, they brought him into court. Personal bankruptcy, $596,000 in debts, $9,000 in assets, client after client not paid, client after client to whom he must have said, trust me, I'll pay it back. Now he's come into this court and says to you, trust me, trust me, this is an accepted methodology. Trust me, I've done this as carefully as I can.
>
> (R. 84 at 54–55.)

The factors to consider in determining whether evidentiary error requires a new trial thus point in favor of a new trial. In these circumstances, the magistrate judge's failure to grant a new trial on Ad–Vantage's motion in the wake of this improper and highly prejudicial cross-examination was an abuse of discretion.

## V. Conclusion

We hold that the magistrate judge erred in failing to grant Ad–Vantage a new trial. We therefore REVERSE and REMAND for a new trial on compensatory damages.

REVERSED and REMANDED.